## William Gould et al. v. G. W. Baker.

### No. 2273.

#### 1. Action for Stolen Money—Abatement—Pendency of Criminal Prosecution.

In a civil action to recover judgment for money stolen by the defendant, a motion to abate or stay the suit until the termination of a pending criminal prosecution for the theft is properly denied.

#### 2. Assumpsit for Stolen Money—Waiver of Tort.

Where money has been stolen, or property stolen which has been converted into money, an action of assumpsit against the thief may be maintained therefor as for money had and received upon an implied promise, and the tort is thereby waived.

#### 3. Same—Attachment Will Lie in Such Case.

Where an action against a thief to recover judgment for stolen money is brought as for money had and received upon an implied promise, the tort is thereby waived, and the action will be regarded as one ex contractu, in which an attachment against the property of the defendant will lie.

#### 4. Same—Charge of Court—Error Not Misleading.

In an action to recover judgment for money alleged in the petition to have been fraudulently and unlawfully, and by means of false pretense, and without the knowledge of the plaintiff, taken from plaintiff by defendants, the evidence showed that the money was stolen from under plaintiff's pillow, while he was asleep, without proof of any false pretense; and the court instructed the jury to find for plaintiff, if defendants unlawfully "and by means of false pretense," and without the consent of plaintiff, took the money from him and appropriated it to their own use. Held, that the error was not misleading, nor to the prejudice of the defendants.

Appeal from the County Court of Cooke. Tried below before Hon. J. P. Hall.

*Blanton & Wright,* and *Green & Culp,* for appellants.—1. The court erred in overruling the motion to quash the attachment sued out in the case, because an attachment will not lie in aid of a suit that is purely tort. This being an action to recover stolen money, and no relation whatever to contract, an attachment cannot be maintained. Hochstadler v. Sam, 73 Texas, 315; Drake on Attachments (6 ed.), sec. 10; Piscataqua Bank v. Turnley, 1 Miles, 312; Elliott v. Jackson, 3 Wis., 649.

*S. B. Garrett,* for appellee.—Any kind of false pretenses by which one party obtains the property of another, and thereby, by contract made, or implied in law, becomes indebted to such other person for the value of the property so fraudulently obtained, will sustain an attachment under the twelfth ground of the statute; and it is not necessary that the owner of the property should by such false pretenses be induced to part with the possession of his property knowingly, if such false pretenses only induced the owner to so place himself or his property or both in such position that it be fraudulently taken by the fraudulent pretender with or without the knowledge or consent of the owner, it is sufficient for at-

tachment. Rev. Stats., arts. 152, 159, 170, 180, 189; Hockstadler v. Sam, 73 Texas, 315; Stiff v. Fisher, 2 Texas Civ. App., 346.

STEPHENS, ASSOCIATE JUSTICE.—Appellee hired lodging from appellant Gould, who furnished him a room over his saloon in the town of Gainesville. During the second night his money, amounting to $495, was stolen from beneath his pillow. He thereupon sued Gould and appellant Jacobs, the bartender, and recovered judgment against them in that sum. He also caused the property of Gould to be attached, and, as it was replevied, judgment went also against the other appellants as sureties on the replevy bond.

The petition charged: "That defendants fraudulently and unlawfully and by means of false pretenses and without the knowledge or consent of plaintiff took said money from plaintiff and appropriated the same to the use and benefit of defendants, and withhold the same from plaintiff; that by reason of the taking and converting of said money to the use and benefit of defendants, they, said defendants, promised and became liable to pay to plaintiff the said sum of four hundred and ninety-five dollars, which sum of money is long since due, and though often requested so to do, the defendants and each of them have refused and still refuse to pay the same to plaintiff, or to pay to him any part thereof, to plaintiff's damage four hundred and ninety-five dollars, for which he sues."

Appellants sought to abate or stay the suit till after the termination of the criminal prosecution for the theft. This was, we think, properly denied. Such a rule prevails in England, but has never been recognized in this country. See Cooley on Torts, 86, 87, and Railway v. Dana, 1 Gray, 83, where the question is fully discussed and the authorities cited.

They also moved to quash the attachment, on the ground that it does not lie in cases like this; and this is the important question in the case.

The prevailing rule undoubtedly is, that attachment does not lie in actions founded on tort, but that it is limited to those arising ex contractu. Such is the origin and history of the remedy. Drake on Attachment, secs. 9, 10; 1 Am. & Eng. Ency. Law, 895. Whether this rule properly applies to the modern systems of procedure, where forms of action have been abrogated, need not be determined, since our Supreme Court, in the recent case of El Paso National Bank v. Fuchs, 34 S. W. Rep., 206, have construed our attachment statute in line with the current of authority. But see Kneeland on Attachment, section 85.

It seems also to be the general rule, that the real nature of a cause of action cannot be changed by any mere fiction of pleading. But Mr. Cooley, in his valuable work on torts, says: "There are a few cases in which a party is permitted to treat that which is purely a tort as having created a contract between himself and the wrongdoer, and waiving his right of action for the tort, to pursue his remedy for the breach of the supposed contract." And he adds, further on: "No question is made of this doctrine, where, as a result of the tortious act, the defendant has come into possession of money belonging to the plaintiff. The law will

not permit him to deny an implied promise to pay this money to the party entitled." Cooley on Torts, 91, 93 (2 ed., 107).

The cases cited in the foot notes fully sustain the text. In that of Howe v. Clancey, 53 Me., 130, where Mary Howe charged that John Clancey "took from her and carried away and converted to his own use $630 in gold coin, which she had in a tin box, buried in the earth, in the cellar of her dwelling house," the Supreme Court of Maine used this language: "When specific articles have been stolen, and have not been converted into money, it may be that the remedy is by an action of trespass, or case, instead of by an action of assumpsit. But if the stolen property was money, or has been converted into money, an action of assumpsit, for money had and received, is maintainable, according to the established doctrine that when one man has money in his hands that in equity and good conscience belongs to another, it may be recovered in this form of action. The plaintiff may waive the tort in this case, as well as in any other case of wrongful taking," citing Railway v. Dana, 1 Gray, 83, supra.

In Shaw v. Coffin, 58 Me., 254, 4 Am. Rep., 290, which was also a theft case, the same doctrine was announced. The Massachusetts case, above, seems also to sustain the principle, though the opinion was mainly upon the proposition in support of which we first cited it.

The following Vermont case was in assumpsit for money tortiously taken, and attachment of a debt by a trustee process was sustained: Elwell v. Martin, 32 Vt., 217. It is there said: "Where property has been tortiously taken and converted into money, the plaintiff may sue in tort, or he may waive the tort and sue in assumpsit. When it is said that he waives the tort, it is not meant that he does any act or makes any averment in his declaration to that effect. He simply brings assumpsit instead of trespass or trover, and thereby foregoes the advantage he would have if he sued tortwise to claim higher or exemplary damages, and to proceed against the person of the defendant."

So here, we construe appellee's petition as quoted above to be equivalent to a declaration in assumpsit for money had and received, whereby the tort was waived and an implied contract declared on. The action was then of the class in which the law authorizes attachment to run, and the motion to quash was properly overruled. See, also, Kneeland on Attachment, sec. 85, and cases cited.

This conclusion is not believed to be in conflict with the opinion of Justice Brown in the El Paso Bank case referred to, as will appear from the following excerpt from that opinion: "Plaintiff's counsel insists that the plaintiff had the right to waive the tort and sue upon the contract; but in this case that rule could not apply, because there was no contract between the plaintiff and the defendant, either express or implied. Bronson did not convert the money to his own use. He derived no advantage from it, and therefore, under the authorities, no implied promise arose on his part to pay the value of it. To raise an implied promise to pay, the person committing the tort must have converted the property

to his own use, derived a benefit from it, for which benefit he can be charged upon an implied promise to pay the value of it, the owner thereby adopting the act as if done by his authority. Cooley, Torts, 107-111."

This opinion, however, cited in another connection the case of Bank v. Turnley, 1 Miles, 314, which is cited in foot-notes under section 10 of Drake on Attachment, to sustain the proposition of the text, that attachment does not lie for money stolen by defendant. This case is not accessible to us. In view of the authorities already cited, it should be presumed, we think, that the tort was not there waived, or that the decision rested upon some peculiar feature of the attachment statute or construction thereof in the State of Pennsylvania. But if it be in conflict with the cases above cited, we would feel justified in disregarding it to follow a rule so well fortified by reason, justice and high authority.

In view of the conclusion reached, we need not determine whether the replevy of the property waived the objection to the attachment.. There is much force in the contention, and it seems well sustained by authority, that where the replevy bond is not merely a forthcoming bond, but takes the place of the property and discharges it from the lien, as seems to be the case under our present statute, the defendant can not, after replevying his property and thus discharging the lien, have the attachment quashed for irregularities in the form of the proceeding. 3 Enc. Pl. & Pr., 84, 85, 86, and cases there cited. But it has been decided by the Supreme Court of the United States that this rule is limited to the class of cases in which the law authorizes an attachment, and that where the law does not authorize attachment at all, the attachment is void, and also the bond. Bank v. Coleman, 124 U. S., Book 31, p. 567 (L. Ed.).

The following charge is complained of: "If you believe from the evidence that the defendants, Wm. Gould and Joe Jacobs, did fraudulently and unlawfully and by means of false pretense and without the consent of the plaintiff in this cause, take from him, the said plaintiff, the amount sued for in this cause, to-wit: four hundred and ninety-five dollars, or any part thereof, and did then and there appropriate same to their own use and benefit, you will find for the plaintiff the amount so taken (if any was taken), not to exceed the amount sued for."

The objection is that the evidence did not raise the issue of obtaining money "by means of false pretense." As there was no evidence of obtaining money by means of false pretense, at least in the legal sense of those terms, the case being one of theft while appellee was sound asleep, or nothing, this objection is sustained by the record; but it seems to us that the jury could not have been misled by the charge. It required them to find, in any event, that Gould and Jacobs took the money without the consent of the owner before they could find against them. The controverted issue was a very simple one, and the jury must have understood what they were expected to determine. To hold otherwise would require us to question whether they had sufficient intelligence to know what is meant by stealing a man's money from beneath his pillow while he is asleep.

Complaint is made of the verdict, but the testimony was too much in conflict and there were too many circumstances corroborative of appellee's contention to warrant this court in disturbing it.

Finding no merit in any of the assignments of error, we affirm the judgment.

*Affirmed.*

Delivered March 28, 1896.