Statement of the Case.
NICHOLLS, J.
On the 4th of March, 1907, plaintiff filed a petition in the civil district court, in which it alleged that one Henry I. Stewart, who lives in this city' and state, is indebted to it in the full sum of $36,783, with interest and costs as hereinafter claimed, for this, to wit: That the said Henry I. Stewart, conspiring with one or more persons in the employ of petitioner, but to your petitioner at present unknown, has fraudulently presented hills purporting to represent the cost' of ties furnished to this petitioner from time to time, between the dates of September 7, 1906, and February 25, 1907, and through the connivance of fellow conspirators in the employ of petitioner has obtained vouchers for the amount of said bills; that by fraud and misrepresentation the signatures of the officers of this company, whose approval is necessary, were obtained and placed upon the said vouchers; that thereafter said vouchers were presented by the said Stewart or his agents or representative, and payment of the amounts thereof was received by the said Stewart. That the said Stewart furnished no ties or other material corresponding to said bills or any ties or materials of any kind, and the money obtained by the said Stewart was fraudulently obtained and without any consideration whatever to this petitioner. That the said Stewart had in the manner aforesaid fraudulently obtained from petitioner at various dates between September 7, 1906, and February 25, 1907, the sum of $36,783, which represents money paid out by petitioner to the said Stewart upon fraudulent representation on this part that the same represented the agreed price of ties furnished by him, while, in fact, no ties were furnished, and no contract for ties was made with the said Stewart, the said deception having been practiced upon this petitioner by the aid and connivance of one or more of its employes. That the said defendant is about to leave the state permanently without there being a possibility in the ordinary course of judicial procedure of obtaining judgment against him previous to his departure; that he has mortgaged, assigned, or disposed of, or is about to dispose of, all his property, rights, or credits, or to give unfair preference to some of them, or is about to convert his property into money with intent to place it beyond the reach of his creditors.
That petitioner is informed and believes that the German American Savings Bank & Trust Company, a corporation created and organized under the laws of this state and domiciled in this city, is indebted unto said defendant or has property in its possession, or under its control, belonging to said defendant, and that the Hibernia Bank & Trust Company, a corporation also created under the laws of this state and domiciled in this city, is also indebted unto the said defendant or has property in its possession or control belonging to said defendant, and petitioner desires that the said German American Savings Bank & Trust Company and the said Hibernia Bank & Trust Company be made garnishees herein, and be required to answer under oath and in writing the interrogatories annexed to this petition.
That by reason of the recent discovery of *395 said fraudulent conspiracy to rob and defraud this petitioner, and by reason of petitioner’s inability up to this time to fully discover all the facts, petitioner is unable to state with more detail than it has heretofore stated the dates and particular circumstances attending said payments of money fraudulently obtained as aforesaid. That it reserves the right to supply such details, if the same be necessary by a supplemental petition. That it also reserves the right to claim other and additional amounts should subsequent investigation show that other frauds of like character not yet discovered have been successfully practiced upon petitioner.
In view of the premises and annexed affidavit considered, petitioner prays: That a writ of attachment issue herein upon plaintiff furnishing bond with good and solvent security in an amount fixed by law and conditioned as the law requires, commanding the civil sheriff for the parish of Orleans to seize and attach, according to law, the property of said Henry I. Stewart, defendant, within the jurisdiction of this court, sufficient to discharge and satisfy petitioner’s said claim, and hold the same subject to the further order of this court and to the judgment to be hereafter rendered herein. That said German American Saving Bank & Trust Company and the said Hibernia Bank & Trust Company be made garnishees herein, and ordered to answer the annexed interrogatories according to law. That the said Henry I. Stewart be duly cited to appear and answer this petition, and that after due proceedings had there be judgment in favor of petitioner and against said Henry I. Stewart for the full sum of $36,783, with interest from judicial demand until paid, and all costs.
That the writs of attachment herein may be maintained, and that petitioner’s lien and privilege, resulting from the attachment and garnishment herein, on all the property or credits herein attached or garnished, be recognized and enforced, and that said property or debts herein attached be paid by preference and priority over all other creditors of said Henry I. Stewart, defendant, out of the proceeds of said sale and for all general relief.
On reading this petition the court ordered that an attachment issue as prayed for, and; that the German American Savings Bank & Trust Company and the Hibernia Bank & Trust Company be made garnishees, andi ordered to answer the interrogatories attached to and accompanying the petition.
A writ of attachment was issued as ordered, and the parties named were made garnishees, and ordered to answer the interrogatories propounded.
On the 6th of March plaintiff filed a supplemental petition, in which it alleged: That,, since the filing of its original petition herein, it has ascertained and now avers that Henry I. Stewart, defendant, is the same person as-Rudolph Fink Garner, an employe of plaintiff who has charge of the preparation of vouchers and the filing away of them when paid. That the said Garner, in execution of a plan to rob and defraud petitioner, drew vouchers in favor of himself under the name of Henry I. Stewart, and annexed thereto, as authority therefor, false bills for ties, purporting to have been furnished and delivered by said Stewart, and forged thereon the approval of various employes and officers of plaintiff, certifying to the delivery of said ties.
That petitioner has obtained from the clerk of this honorable court a writ of attachment ordering the sheriff of this parish to seize and take into his possession the property, real and personal, rights and credits of defendant, Henry I. Stewart, and to be caused to be made in the manner prescribed by law an amount sufficient to pay and satisfy the claim of the plaintiff herein. That plaintiff is entitled to similar writs in the name of Rudolph Fink Garner, whose alias is Henry I. Stewart, which said writs and the *397 writs originally issued herein are necessary to protect plaintiff in the premises.
That plaintiff repeats and reiterates the allegations contained in its original petition, and avers that the said Garner, alias Stewart, as aforesaid, is about to leave the state permanently without there being a possibility, in the ordinary course of judicial procedure, of obtaining a judgment against him previous to his departure. That he has mortgaged, assigned, or disposed of, or is about to dispose of, all of his property, rights, or credits, or some part thereof, with intent to defraud his creditors, or to give an unfair preference to some of them, or is about to convert his property into money, with intent to place it beyond the reach of his creditors, and is concealing himself to avoid being cited and forced to answer any suit brought against him. That the said Rudolph Fink Garner, alias Henry I. Stewart, is justly and truly indebted to plaintiff in the sum of $36,783, as claimed in the original petition herein, being the sum of money which he has fraudulently obtained from plaintiff upon fraudulent representations, as aforesaid, that the same is due for ties, when, as a matter of fact, no ties were ever sold or delivered by the said Garner, alias Stewart, to plaintiff.
That petitioner believes that the New Orleans National Bank, a corporation created under the laws of this state and of the United States and domiciled and doing business in this city, and the United States Safe Deposit & Savings Bank, a corporation created under the laws of this state and domiciled in this city, are each indebted to the said Rudolph Fink Garner, alias Henry I. Stewart, or has property in its possession, or in its control belonging to the said Garner, alias Stewart, and petitioner desires that the said New Orleans National Bank and the said United States Safe Deposit & Savings Bank be made garnishees herein, and be required to answer under oath and in writing the interrogatories annexed to this petition.
In view of the premises and the annexed affidavit, petitioner prays for leave to file this supplemental petition, and that a writ of attachment issue herein upon plaintiff furnishing bond, with good and solvent security in the amount fixed by law and conditioned as the law requires, commanding the civil sheriff of the parish of Orleans to seize and attach according to law the property of said Rudolph Fink Garner, alias Henry I. Stewart, within the jurisdiction of this court, sufficient to satisfy and discharge petitioner’s said claim, and to hold the same subject to the further orders of this court and to judgment hereafter to be rendered herein.
That the said New Orleans National Bank and the said United States Safe Deposit & Savings Bank be made garnishees herein, and ordered to answer the annexed interrogatories according to law.
That said Rudolph Fink Garner be duly cited to appear and answer this petition, and that after due proceedings had there be judgment in favor of petitioner and against the said Rudolph Fink Garner, alias Henry I. Stewart, for the full sum of $36,783, with interest from judicial demand until paid, and all costs.
That the writ of attachment herein be maintained, and that petitioner’s lien and privilege resulting from the attachment and garnishment herein on all the property or debts herein attached or garnished be recognized and enforced. That said property or debts be sold, and that petitioner’s claim, interest, and costs paid by preference and priority over all other creditors of said Rudolph Fink Garner, alias Henry I. Stewart, defendant, out of the proceeds of said sale. And for all general relief.
On reading this petition, the court ordered it to'be filed, and that a writ of attachment issue, as prayed for, and that the New Orleans National Bank and the United States Safe Deposit & Savings Bank be made gar *399 nishees and. duly cited to answer the interrogatories accompanying the petition.
A writ of attachment issued, and the parties named were made garnishees, and ordered to answer.
On March 21, 1907, the court appointed Robert H. Marr, Esq., attorney at law, as the advocate to represent Henry I. Stewart and to defend him in this suit.
On April 12, 1907, Robert H. Marr, curator ad hoc, for Henry I. Stewart, suggesting to the court that the matters alleged in plaintiff’s original and supplemental petition were not sufficient in law to warrant the issuance of a writ of attachment against the property of defendant, it was ordered by the court that plaintiff show cause why said writ of attachment should not be dissolved and set aside.
On trial of the rule the court made the rule absolute, and ordered that the writ of attachment issued against Henry I. Stewart in the original and supplemental petitions be dissolved and set aside.
Plaintiff has appealed.
The writ, it will be seen, was dissolved on the ground that the suit was an action ex delicto.
Counsel for appellant urge in their brief:
“First, that the judgment should be reversed because, even if the suit were ex delicto, an attachment would lie, since the debt due by defendant is fixed and certain in amount and capable of being sworn to positively and definitely ; second, because the suit should not be regarded as founded on a tort, but upon an implied or quasi contract. Counsel say the object of the suit is to recover a certain fixed, definite sum of money which plaintiff paid in error to one Henry I. Stewart, and which the latter received, knowing that it was not due to him. The fact that plaintiff was mislead by fraud and deception to make the payment is erroneously supposed to make the action one ex delicto. But the essential nature of the action, as one to recover money had and received under circumstances creating an implied promise or quasi contract to repay the same, is not altered by the circumstance that the parties receiving the money were guilty of dishonest or fraudulent pi’actices. Be that as it may, the facts alleged show that defendant or defendants are each indebted to plaintiff in a fixed, definite sum, not conjectural or estimative, but as certain in amount as if represented by a promissory note.
“The i-emedy by attachment is statutory. The cases in which the writ will lie are determined in each state by statute. In several of the states the remedy is given in all cases, whether the action is on a contract or unliquidated. In other states the statute expressly limits the remedy to actions on a contract express or implied, and, in such states an attachment cannot be had in any suit ex delicto, and whether the amount claimed is fixed and certain, or indefinite and conjectural, cuts no figure, if the action is upon a tort. But when, as in this state, the test is that the demand is in its nature certain and definite in amount, the inquix-y is not whether the cause of action is based on a contract or on a tort, but whether the claim is in its nature certain, definite, and fixed in amount.
“The statute law in Louisiana on the subject of attachments is found in the Code of-Practice. Article 242 declares that the property of the debtor may be attached ‘in order to secure the payment of a debt, whatever may be its nature, whether the amount be liquidated or not, provided the creditor, his agent or attorney in fact, who prays for the attachment, states expressly and positively the amount which he claims.’
“There is obviously nothing in our statute law to compel or justify the holding that the process of attachment can issue only in actions arising from contracts or quasi contracts. Nevertheless it is true, as a general rule, that an attachment will not lie in an action ex delicto. In order to apply intelligently any rule of law, it is necessary to ascertain and understand the reason for the rule; for it is generally true that, when the reason for the rule ceases, tlie rule itself ceases to be applicable; and, when the reasons for the rule have been ascertained, they should be given due weight, although the courts may not have considered it necessary, after establishing the rule, to repeat in each subsequent decision the reasons therefor.
“The reason which underlies each of the decisions in this state denying the right to a writ of attachment in damage suits is to be found in the requirement of the Code of Practice that the creditor must be able to swear expressly and_ positively to the exact amount due him. This oath is not an empty formality, but an essential sine qua non. It is not permissible to make a claim essentially uncertain in amount certain and definite by swearing to it. The test is not whether the creditor is willing to swear that the amount Ixe claims is the actual amount due, but whether from the nature of the claim, as disclosed by the petition, it is conjectural and estimative or fixed and certain in amount.
“Our next contention is that, even if by the statute law of this state the remedy of attachment is limited to actions on contracts expressed or implied, the writs were properly is *401 sued in this case. We shall support this contention by the decisions of the Supreme Courts of states which expressly limit attachments to actions on contracts, express or implied. Out of a large number of cases announcing the same doctrine, we quote the following.”
Counsel then make copious extracts from Farmers’ National Bank v. Fonda, 32 N. W. 604, 65 Mich. 533; Foote v. Ffoulke, 67 N. Y. Supp. 368, 55 App. Div. 617; McNeilly v. Richardson, 4 Cow. (N. Y.) 607; Gould v. Baker, 35 S. W. 708, 12 Tex. Civ. App. 669; Barth v. Graf, 76 N. W. 1100, 101 Wis. 27; Western Association v. Towle, 26 N. W. 104, 65 Wis. 247; Nevada Co. v. Farnsworth (C. C.) 89 Fed. 164; Hart v. Barnes, 40 N. W. 322, 24 Neb. 782; Elwell v. Martin, 32 Vt. 217.
Counsel refer to Civ. Code, arts. 21, 1816, 1818, 2301. They say:
“Reduced to a last analysis, this suit is simply one to recover money paid in error, money received by defendant under circumstances which bind him in equity and good conscience to restore it. Under principles of law so universal that they are found both in the civil and the common law, an implied promise exists on thte part of defendant to restore the exact amount received.
“But, were it otherwise, were this a suit ex delicto, what reason can be assigned under our statute law and our system of pleading why an attachment will not lie when the demand is for a fixed determinate sum of money? To so hold would not overrule any adjudicated case. It would not expose defendants to have their property seized in limine for exaggerated claims estimative and conjectural in amount. To hold otherwise would certainly not be in furtherance of justice, but would certainly tend to assist wrongdoers to escape with their ill-gotten booty. We ask that the judgments appealed from be reversed.”
In the judgment appealed from the trial judge says:
“This suit is brought under articles 2315 and 2324 of the Civil Code, wherein it is provided, under the heading of ‘Offenses and Quasi Offenses,’ as follows:
“ ‘Art. 2315. Every act whatever of man that ■causes damages to another obliges him by whose fault it happened to repair it. * * *
“ ‘Art. 2324. He who causes another person to do an unlawful act, or assists or encourages him in the commission of it, is answerable in solido with that person, for the damage caused by such Act.’
“The plaintiff in its petition directly charges Stewart or Garner, or both, with an offense against the state of Louisiana, and the punishment of which is provided for in the Revised Statutes. It enumerates the crimes of obtaining money under false pretenses, conspiracy, forgery» embezzlement, breach of trust, robbery, etc; and relief for the damages alleged to have been inflicted upon the plaintiff may be recovered under the provisions of the law just quoted. But these provisions give rise to an ordinary action only, and not the right to a writ of attachment. If the allegations contained in the plaintiff’s petition are true, then has plaintiff been damaged by the action of the defendant or defendants. And it is entitled, if it proves its case, to a judgment in damages against him or them.
“It is true in the present case that affidavit had been made by plaintiff as to the exact amount of the damages inflicted by defendant or defendants upon it; but it is also true, in its original petition, that plaintiff ‘reserves the right to claim other and additional amounts, should subsequent investigation show that other frauds of like character not yet discovered have been successfully practiced upon petitioner.’
“Under the law, as found in section 2 of the Acts of 1817, p. 26, attachments might have issued in suits sounding in damages. It is therein provided that in all actions where the amount or sum due is $100 or upwards, whether upon bond, bill, or exchange, promissory note, or liquidated account, and in every case where the amount of the debts, damages, or demand is ascertained and specific, if the plaintiff in action, or his agent or attorney in fact, makes affidavit of the amount really due of his debt or demand, * * * ‘it shall be the duty of the clerk of court to issue a writ of attachment,’ .etc.
“The present law with reference to attachment is found in article 242 of the Code of Practice. ‘The property of the debtor may be attached in the hands of third persons by his creditors; in order to secure the payment of a debt, whatever may be its nature, whether the amount be liquidated or not, provided the creditor, his agent or attorney in fact, who prays for a judgment states expressly and positively the amount which he claims.’
“Under the law as found in the present Code of Practice, the court has held in Prewitt v. Carmichael, 2 La. Ann. 943, which was a suit sounding in damages, and where ‘the damage sustained is definitely stated, sworn to and approved,’ that an attachment would not lie, and the writ was dissolved.
“In the case of Barrow v. McDonald, 12 La. Ann. 110, where a slave had been killed by a member of an ordinary partnership, and the other partner instituted a suit for the value of his share in the said slave, the court held that this was an action arising ex delicto, and that an attachment could not properly issue.
“In the same case, where the plaintiff had asked for judgment for a specific amount alleged to be due by the dissolution of a partnership *403 existing between him and the defendant, the court held that such a contract would not give rise to the issuance of a writ of attachment. There ‘it was urged, in support of the attachment, that the business of the partnership was so limited and simple in its features that the plaintiff could swear with reasonable certainty to the precise balance,’ and the value of the slave heretofore referred to was also sworn to. But the attachment was dissolved.
“In the case of Childs v. Wilson, 15 La. Ann. 512, which was a suit for the value of four horses, two of which had been sold by the defendant to the plaintiff and the other two had contracted diseases from the first two, and the value of the four horses was sworn to, the writ of attachment was dissolved and set aside as having been unlawfully issued. In the case of West, Renshaw & Cammack v. Chew, 18 La. Ann. 630, the damages were itemized and set forth in the petition and already paid by the plaintiff and sworn to, but the writ of attachment was set aside. In the case of Young v. Princess Royal, 22 La. Ann. 388, 2 Am. Rep. 731, the exact amount of the damages was sworn to but the attachment was set aside.
“In all of the foregoing cases the court has uniformly held that no attachment will issue in a claim for damages arising ex delicto, and in some of these cases, even where there was a contract, and the exact amount of the damages was shown by the necessary affidavit. It is the settled jurisprudence of the state that attachments will not issue, or be sustained, where the cause of action is for damages arising ex delicto; and the case against Garner is clearly set forth in the petition of plaintiff as being of that nature.
“It was urged in argument by counsel for plaintiff that this is an action under article 2301 of the Civil Code which provides: ‘He who receives what is not due to him Whether he receives it through error or knowingly, obligates himself to restore it to him from whom he has unduly received it.’ In other words, that this is a suit on a quasi contract, and that a writ of attachment will therefor lie. Plaintiff errs in denominating its action to be on a quasi contract. It declares repeatedly that the defendant has forged, embezzled, robbed, and conspired and obtained money from it by false pretenses, and that ‘no contract for ties was made with the said Stewart.’ It nowhere alleges that the defendant Garner received what is not due to him either through error or knowingly. The word ‘receives’ used in article 2301 of the Civil Code, is used in its ordinary acceptation. The receiving there referred to is not a felonious receiving. It is a receiving ‘through error or knowingly,’ but without criminal intent. When a defendant receives feloniously — that is when he forges, embezzles, robs, or obtains money by false pretenses — and he is sued for the damages arising therefrom, as is defendant in this case, provision is made for suit in article 2315 of the Civil Code; he having perpetuated an act ‘that causes damage to another.’ That damage arises by or through his fault, and the law obliges him» to repair it.
“There is a clear distinction made in the-Code between the prosecution of a suit against one who receives what is not due through error- or knowingly, and a prosecution against one who has feloniously taken what does not belong-to him. One is a suit in damages for an offense committed against the person or property of the-plaintiff. In the former case a writ of attachment might lie, while in the latter case a writ of attachment will not lie; the latter case being ■ for damages arising ex delicto.”
Opinion.
The trial judge is correct in. saying that' this court has on several occasions declared) that a writ of attachment could not properly be made to issue in an action ex delicto; hut in so doing the doctrine was too broadly stated. It should have decided each action upon its own characteristics, and not referred to-the character of the fact, or facts, out of which the cases arose as controlling the legal situation. The district court in its action has been led into error by the language of this court which has been referred to. It is-not true that actions arising from or out of certain acts or facts have necessarily the same character as the acts out of which they arise. State v. Judges, 4 Rob. 87. While an. act criminal in character gives rise to a criminal action, it at the same time furnishes the • occasion for the bringing of a civil action.. Thus, if a thief steals a watch or other article of property, he subjects himself to arrest, trial, and punishment in the enforcement of the criminal laws of the state, but he ■ likewise opens to the owner of the watch» the right to have recourse to a civil action for its recovery, and that action is not one-ex delicto.
We have constantly before us actions ex delicto originating out of obligations ex contractu (Dave v. Railroad & Steamship Co., 46 La. Ann. 276, 14 South. 911), and there is-no reason or principle why actions not ex delicto cannot have their origin in quasi» offenses.
*405 It' is true that article 242 of the Code of Practice on the subject of attachments uses the words “debt,” “debtor,” and “creditor”; but we do not think that the term “debt” should have placed upon it a meaning which would limit its scope to the “obligation of a person to pay determinate sum of money due on an express agreement.” As far back as the case of Hunt v. Norris, 4 Mart. (O. S.) 529, the Supreme Court said:
“If we refer to authors on the common law of England to ascertain the legal acceptation of the word ‘debt’ in its most strict and teehnial meaning, it is perhaps limited to the idea of a determinate sum of money due on an express agreement. Yet the action of debt is not confined to contracts for money alone.”
The court said:
“Obligations arising from implication of law are equally binding with those created by an express agreement.”
It declared that “no distinction ought to be made between an express and implied contract,” and concluded that:
“It might be properly and safely laid down as a general rule that all obligations arising from contracts expressed or implied, either for the payment of money or the delivery of goods, create a ‘debt’ on the part of the obligor ‘on which an attachment may issue, whenever the amount may be fairly ascertained by the oath of the obligor.”
The quotation made in plaintiff’s brief from decisions in other jurisdictions are in line with the views announced above by this court in Hunt v. Norris. In Farmers’ National Bank v. Fonda, 32 N. W. 664, 65 Mich. 533, the court held that, where money had been wrongfully taken, the law created an implied promise or obligation to return the same, and that the remedy by attachment extended to such obligations existing by legal intendment only.
Defendant in that case had embezzled or stolen money belonging to the plaintiff while he was in his employ. The court in that case said:
“There is no such equity in favor of wrongdoers that exceptions should be created in their favor. It is rather the duty of the courts to hold them subject to its process where the law by fair construction reaches them, and we think this case is within its exact language.”
We do not think the words of our law should be narrowed by construction as to be used as a shield and protection to wrongdoing. That was certainly not the purpose of the law. The language of decisions cannot be invoked under the doctrine of stare decisis as establishing “a rule of property” in aid of tortious acts.
The word “debt” is used in article 242 of the Code of Practice, but the term is broadened so as to extend to “debts” of “whatever nature.” We find in Bouvier that word defined as follows:
“Debt (Latin ‘debere,’ to owe; ‘debitum,’ something owed): All that is due a man under any form of obligation or promise.” Gray v. Bennett, 3 Metc. (Mass.) 522; Appeal of City of Erie, 91 Pa. 402.
“In practice. A form of action which lies to recover a sum certain. Kennebec Purchase, Proprietors of v. Laboree, 2 Greenl. (Me.) 279, 11 Am. Dec. 79; Steph. Pl. 77, note. It lies whenever the sum due is contained or ascertained in such a manner as to be readily reduced to a certainty without regard to the manner in which the obligation was incurred or is evidenced. Cooper v. Maddox, 2 Sneed (Tenn.) 145; Flanagan v. Camden Mut. Ins. Co., 25 N. J. Law, 506; Owen v. Bartholomew, 9 Pick. (Mass.) 521; Home v. Semple, 3 McLean (U. S.) 150, Fed. Cas. No. 6,658; Pollard v. Yoder, 2 A. K. Marsh. (Ky.) 264; Bowman v. Whittemore, 1 Mass. 243; Stockwell v. United States, 13 Wall. (U. S.) 531, 20 L. Ed. 491; United States v. Claflin, 97 U. S. 546, 24 L. Ed. 1082; Baum v. Tonkin, 110 Pa. 569, 1 Atl. 535.”
The word “debtor” means “one who owes a debt. He who may be constrained to pay what he owes.” See Civ. Code, art. 2132
By “payment” is meant “not only the delivery of a sum of money, when such is the obligation of the contract but the performance of that which the parties respectively undertook either expressly or impliedly or by law to give or to do. Civ. Code, art. 2131.
The word “creditor” means “one who has the right to require the fulfillment of an obli *407 .gation. A person to whom any obligation is Hue.” See Civ. Code, arts. 2132, 3556.
In Louisiana an “obligation” is in its general and most extensive sense synonymous with “duty.” Civ. Code, art. 1756. Obligations are of three kinds — imperfect, natural, .and civil or perfect obligations. Civ. Code, ■art. 1757.
A civil obligation is a legal tie which gives the party with whom it is contracted the right of enforcing its performance by law. ■Civil obligations in relation to their origin .are of two kinds:
(1) Such as are created by operation of law.
(2) Such as arise from the consent of the parties who are bound by them which are •called contracts or conventional obligations.
Implied contracts are. recognized and enforced in this state. Civ. Code, arts. 1780, 1816, 1818. Obligations created by law are ■enforceable by those in whose favor they are •created as fully and completely as obligations resulting from contracts.
There can be no doubt that a person who .receives what is not due to him, whether he receives it through error or knowingly, is “by law” placed under the obligation of restoring it to him from whom he has unduly received it, and this “obligation” to restore it to suc-h person carries with it the “right” ■to the person to whom this obligation is due to enforce the duty or debt by action. Civ. •Code, art. 2133.
This obligation is expressly declared by article 2301 of the Civil Code, which is found .under the heading “Of the Payment of a Thing Not Due,” and the articles of the Code ■under that heading constitute the third section of those found under the heading “Quasi ■Contracts.”
Under article 2292 of the Civil Code, certain obligations are contracted without agreement either on the part of the person bound or of him in whose favor the obligation takes place. Some are imposed by the sole authority of the laws, others from an act done by the party obliged or in his favor.
Article 2294 declares that all acts from which there results an obligation without an agreement in the manner expressed in the preceding article form quasi contracts. But there are two principal kinds which give rise to them, to wit, “the transaction of another’s business,” and the “payment of a thing not due.”
If plaintiff’s money was unduly taken from him as alleged by him, he had the choice of two remedies — one ex delicto for damages, and one under the law authorizing him to recover the money itself which had been taken from him. Plaintiff has elected to bring an action based upon the law. The choice of remedies was not and is not left to the defendant. He cannot insist upon being sued ex delicto. The choice is left to the plaintiff. The selection made is usually expressed by saying that the party has waived his action on the tort in favor of recourse to the other remedy. The choice carried with it some advantages, but it was attended also by some disadvantages. The plaintiff in this suit is not seeking damages from the defendant It is suing for the recovery of the precise amount of money belonging to it which it alleges was unduly received by the defendant.
In Elwell v. Martin, 32 Vt. 217, the court said:
“Where property has been tortiously taken and converted into money, the plaintiff may sue in tort, or he may waive the tort and sue in assumpsit. When' it is said he waives the tort, it is not meant that he does any act or makes any averment in his declaration to that effect. He simply brings assumpsit instead of trespass or trover, and thereby foregoes the advantage he would have if he sued tortwise to claim higher or exemplary damages, and to proceed against the person of the defendant.”
In Western Assurance v. Towle, 26 N. W. 106, 65 Wis. 252, the court said:
“The allegations of fraud, false swearing, and deceit practiced by the defendants alleged in *409 both complaints, are alleged not as the cause of action, but for the purpose of showing that defendants have in their possession a certain sum of money which in law they ought to pay to the plaintiff on demand.”
In Barth v. Graf, 76 N. W. 1102, 101 Wis. 27, it was held that a complaint, which alleging the fraudulent withdrawal of funds, alleged that defendant thereby became and is now indebted to the plaintiff, was manifestly a waiver of the tort, and an election to sue for the exact amount taken as upon an implied contract.
In Gould v. Baker, 35 S. W. 708, 12 Tex. Civ. App. 669, the declaration alleged that defendant, fraudulently and unlawfully and by means of false pretenses and without the knowledge of plaintiff, took said money from plaintiff, but the action was held not to be one based on a tort. The tendency of the courts is to construe the action as one on an implied contract when necessary to' support the remedy.
In our own state in Crane v. Lewis, 4 La. Ann. 320, this court held that an attachment would lie in an action by the purchaser against the vendor of a slave alleged to have absconded from the plaintiff and to have returned to the vendor who harbored him and refused to give him up to recover the value of the slave and of his services during his detention and damages for expenses incurred on demanding him and for counsel fees. It was claimed by the defendant that no attachment could issue under the decisions of the court in Prewitt v. Carmichael, 2 La. Ann. 943, Swagar v. Pierce, 3 Ann. 435, and Holmes v. Barclay, 4 La. Ann. 63. The court said:
“It appeared by the petition that the defendant had not only broken his contract, but committed a tort in harboring the slave and depriving plaintiff of his services, but we do not understand that his responsibility incurred by the former is diminished or merged by an outrage perhaps a crime being added to it.”
If it be true, as alleged in plaintiff’s supplemental petition, that defendant, Stewart and Garner, are one and the same person, then the amount received in the name of Stewart was really received by Garner, in violation of the terms of his contract of employment and during the existence of contract relations between the plaintiff and the party receiving the money (which fact defendant urges was essentially necessary to prevent the action from being one ex delicto) becomes-present in the case, and would save the attachment from being set aside in limine, even, if otherwise defendant’s position that the attachment should have been dissolved because-the action was one ex delicto had been correct
We are of the opinion that the judgment appealed from is erroneous and it is hereby,, for the reasons assigned, annulled, avoided,, and reversed, the attachment which the court set aside and dissolved is hereby reinstated,, and the cause is remanded to the district court for further proceedings according to-law, costs to be paid by the appellee.