RONEY et al. v. PEYTON. *

No. 4901.

Court of Appeal of Louisiana. Second Circuit.

March 8, 1935.

Blanchard, Goldstein, Walker & O'Quin, of Shreveport, for appellants.

Cook & Cook and C. D. Egan, all of Shreveport, for appellee.

MILLS, Judge.

Plaintiffs allege that on February 4, 1929, the Robinson-Slagle Lumber Company, Inc., was the holder and owner of a mortgage note made by W. K. Hinton, reduced by payments to a face value of $600; that on February 25, 1929, W. A. Robinson, president and general manager of the lumber company, directed the

delivery of this note to A. P. Peyton in partial payment of a mortgage note held by Peyton, which note was made by and was the personal obligation of W. W. Campbell and W. A. Robinson; that at the time Peyton was fully aware of these facts; that since its delivery, the Hinton note has been paid to Peyton and the mortgage securing it canceled; that the action of Robinson in using the company's note in payment of his personal debt was concealed from its other directors and did not become known to petitioners, its receivers, until the early part of the year 1933, and after petitioners had filed suit against Peyton to recover other assets of the company used by Robinson in payment of the note held by Peyton; that in the prior suit, the allowance of an amended petition, setting out the conversion of the Hinton note, was refused.

The prayer is for judgment ordering Peyton to account for and pay over to petitioners the full amount collected by him on the Hinton note, with legal interest from April 9, 1931, until paid, and costs.

To this petition defendant first pleaded the prescription of one year, contending that the action was ex delicto. · This plea being overruled, he then pleaded that he acquired the Hinton note in good faith and that his ·title was validated by the acquisitive prescription of three years. This plea was properly referred to the merits. He then filed a supplemental plea, setting out that he received in all for the Hinton note $625.91, to which he likewise claims title by the three-year prescription. This plea was also referred to the merits. An exception of no cause of action was overruled. Whereupon, defendant answered, admitting receipt of the Hinton note, but alleging that he was told by both Robinson and Campbell that the note held by him, made by them, was actually the obligation of the Robinson-Slagle Lumber Company, Inc.; that this note was dated September 10, 1927, matured one year thereafter, was for $6,000, bore interest at the rate of 8 per cent. per annum from its date, was indorsed by A. C. McClelland and E. C. Montgomery, and was secured by mortgage on sixteen lots of the Manchester subdivision, on what is known as Douglas Island, separated from the city of Shreveport by Cross bayou; that the obligation was incurred by the makers in the furtherance of the business of the lumber company, and if not a legal, was at least a moral, obligation of the company; that in addition to the Hinton note, Robinson delivered to defendant in payment of the Robinson-Campbell note, merchandise whose value is demanded in the prior suit, referred to in plaintiffs' petition; that upon receipt of the aforesaid merchandise and note, the Robinson-Campbell note was delivered to Robinson and by him to Robinson-Slagle Lumber Company, Inc., which now holds same; that to the knowledge of defendant, at the time of the above transactions, Robinson, as president and general manager, conducted the affairs of the lumber company as he saw fit, without direction or interference by the board of directors or stockholders, who were aware of and acquiesced in his actions; that by their acquiescence the directors and officers of the corporation held out to the public that Robinson was authorized to do as he saw fit with its property, and that the company and its receivers are estopped to now claim otherwise; that though the company was fully aware of the transactions involved herein, and though he has had numerous transactions and adjustments of account since, including a payment in full on February 25, 1932, the company has made no demand upon him for the proceeds of the Hinton note and has thereby ratified the action of its president in regard to same; that plaintiffs are holding as their own the Robinson-Campbell note, have made no offer to return same to defendant or to place him in the same position he was before the transaction; and, finally, that the facts and parties in the prior case are identical with this, and the judgment in that case, adverse to plaintiffs, constitutes res judicata. Plaintiffs' motion to strike from defendant's answer the final averment as to the similarity and result of the former trial, as well as the plea of res judicata, was allowed. The case then proceeded to trial on the merits, before a jury prayed for by defendant, which returned a verdict rejecting plaintiffs' demand; from which plaintiffs have appealed. Defendant answered the appeal, praying that, in the event the court should fail to affirm the verdict of the jury on the merits, then that his exception of no cause of action and pleas of estoppel and prescription of one and three years should be sustained.

■ In passing upon the pleas of prescription, it is necessary to determine whether the action, as brought, is one in tort or upon a quasi contract. The form of an action is governed by the prayer of the petition. In the present case, the demand is not for damages, but for an accounting and the return of a specific sum of money received by defendant, rightly belonging to and for the benefit of plaintiffs.

■ The earliest case we have found on the subject is that of Reeves et al. v. Smith et al., 1 La. Ann. 379, which holds: "The act of a party in taking as security for a loan of money made to an agent for his private use, a pledge of a claim against a third person, known by the lender to belong to the principal of that agent, forms a quasi-contract, and the party so lending is bound to account to the principal for the claim or its proceeds, as the agent himself would have been, if the pledge had not been given. Civil Code, arts. 2273, 2279."

■ This case, being on all fours with the present action, if still authority, disposes of the pleas of prescription, as quasi contracts are prescribed in ten years; and of the exception of no cause of action, as the transaction is held to impose an obligation. We do not find that this case has ever been overruled or adversely commented on.

Article 2293 (2272) of the Revised Civil Code provides: "Quasi contracts are the lawful and purely voluntary act of a man, from which there results any obligation whatever to a third person, and sometimes a reciprocal obligation between the parties."

Article 2294 (2273) reads: "All acts, from which there results an obligation without any agreement, in the manner expressed in the preceding article, form quasi contracts."

Article 2301 (2279) reads: "He who receives what is not due to him, whether he receives it through error or knowingly, obliges himself to restore it to him from whom he has unduly received it."

All above-quoted articles are contained in chapter 1 of title 5 of the Code, which chapter deals with quasi contracts.

■ As the decision in the Reeves v. Smith Case, supra, is amply supported by these articles of the Code, it would seem that further citation is unnecessary. But defendant contends that the above provisions expressly apply only to lawful acts and that the conduct of Peyton in the present case, under the allegations of the petition, is shown to have been unlawful. Much stress is laid upon the allegation that W. A. Robinson embezzled the note, which, of course, if true, would constitute a highly unlawful act. But this suit is not brought against Robinson for the unlawful conversion of the note. It is brought against Peyton for the money he received knowing that it rightfully belonged to petitioners. Such an act is unlawful in the sense that he acquired no legal title to the proceeds, but is not unlawful in the sense that would convert the transaction into a tort. If it had that effect, article 2301, stating specifically that such a transaction gives rise to a quasi contract, would be expunged from the Code. Plaintiff may have other causes of action arising out of this transaction, but he has exercised his right of election to sue upon a quasi contract. Morgan's La. & T. R. & S. S. Co. v. Stewart, 119 La. 392, 44 So. 138.

In the above case, the court said, in the syllabus by it: "Actions arising from or out of certain acts or facts have not necessarily the same character as the acts out of which they arise. The present action is not one 'ex delicto,' though the fact or act to which it owes its origin may have been a quasi offense."

The case holds further that the obligee and not the obligor has the right to elect the particular remedy he chooses. Liles v. Barnhart, 152 La. 419, 93 So. 490; Bickham v. Gulf Ref. Co., 161 La. 734, 109 So. 405.

Plaintiffs having elected to sue for money had and received, and not for damages, their action is quasi contractu and is subject to the prescription of ten years. Revised Civil Code, article 3544; Smith v. Phillips, 175 La. 198, 143 So. 47.

In Bryceland Lumber Co. v. Kerlin et al., 143 La. 242, 78 So. 482, it is held that an action by a corporation to recover from its manager the amount of his personal debts, paid by him or under his direction with funds of the corporation and without authority, is subject; not to the prescription of one or of three years, but to that of ten years.

We therefore find that the exception of no cause of action and the plea of prescription of one year were correctly overruled, and that the like plea of three-year prescription should be and is overruled.

■ The Hinton note, originally for $1,970, had been reduced by payments made to a face value of $600. It was the property, and was carried on the books as an asset, of Robinson-Slagle Lumber Company, Inc. On or about February 25, 1929, having been so instructed by W. A. Robinson, H. R. Gladney, cashier and keeper of the books of the company, delivered this note to A. P. Peyton in person at the office of the lumber company. Again acting upon instructions from Robinson, in order to force a balance of the company's books, and for no other possible purpose than to conceal the real facts, Gladney charged the account of C. A. McClendon with $1,000, credited Peyton's account with $400, and bills receivable with $600. McClendon, at the time, was already largely in debt to

the lumber company, his account being practically dead. He apparently had no knowledge whatever of this charge made to him and in no way consented to it. Needless to say, nothing has since been paid on the McClendon account.

We are satisfied, from the manner in which this transaction was handled upon its books, that the payment or delivery of this $600 note to Peyton was not for its benefit, but was engineered solely for the personal benefit of W. A. Robinson. There can be no other reasonable explanation of these juggled entries. We are also satisfied that this fact was known, or should have been known, to A. P. Peyton from the fact that the Hinton note was received by him from the agents of the lumber company as a payment under a contract referred to later, which clearly showed that the transaction was that of Robinson and not of the lumber company. The note was delivered to Peyton in part payment of the $6,000 note described in the petition, signed and made by W. A. Robinson and W. W. Campbell, and indorsed by A. C. McClelland and E. C. Montgomery, none of whom, except Robinson, had any connection with the lumber company. This payment was made pursuant to the following written agreement entered into between Peyton and the indorsers and makers of the note, on the 15th day of October, 1928. We consider the language of this contract so important to the decision of this case that we quote it in full:

"State of Louisiana, Parish of Caddo:

"This memorandum of agreement, Made and entered into by and between A. P. Peyton, a resident of the above named Parish and State, hereinafter known as party of the first part, and W. A. Robinson, W. W. Campbell, A. C. McClelland and E. C. Montgomery, also residents of said Parish and State, hereinafter known as parties of the second part,

"Witnesseth: That, whereas the party of the first part is the holder and owner for value before maturity of a certain promissory mortgage note dated September 10th, 1927, for the sum of Six Thousand & no/100 ($6,000.00) Dollars, due one (1) year after its date, bearing eight (8%) percent per annum interest from its date until paid, and paraphed 'Ne Varietur' by T. H. Anderson, Deputy Clerk on September 13th, 1927, made and executed by W. A. Robinson, and W. W. Campbell to their own order and by them endorsed in blank, and endorsed in blank by the said W. A. Robinson, W. W. Campbell, A. C. McClelland and E. C. Montgomery, the said note secured by mortgage on Lots Fifteen (15) to Thirty (30) inclusive, Block Twenty (20) of the Manchester Subdivision, and

"Whereas, the said mortgage note above described was due and payable September 10th, 1928, and,

"Whereas, the parties of the second part desire an extension of the date for payment of said note, the following agreement has been entered into by the parties hereto, to-wit:

"First: The party of the second part, W. A. Robinson, has paid the interest upon said note to September 10th, 1928, the payment of which interest is acknowledged by party of the first part the said W. A. Robinson, party of the second part, further upon the execution of this instrument has paid to said party of the first part the sum of one thousand & no/100 ($1,000.00) Dollars, represented by credit memorandum of the Robinson-Slagle Lumber Company, Incorporated, for One Thousand ($1,000.00) Dollars worth of lumber and building material, which the said W. A. Robinson, obligates himself to deliver to the said party of the first part as if, and when, demanded, and which One Thousand ($1,000.00) Dollars shall be credited on the reduction of the principal of the above described note.

"Second: The said W. A. Robinson, party of the second part, has likewise executed and delivered in pledge to the party of the first part, as security for the payment, and as additional collateral for the payment of the balance due upon the mortgage note described in the first paragraph of this agreement, a certain mortgage note for One Thousand ($1,000.00) Dollars, dated at Shreveport, Louisiana, October 15th, 1928, due and payable six (6) months after its date, payable to the order of the maker and by him endorsed in blank, and bearing interest at the rate of eight (8%) percent per annum from its date until paid, and paraphed 'Ne Varietur' by Frank M. Cook, a Notary Public, in and for Caddo Parish, Louisiana, to identify it with a special mortgage covering an undivided one-half interest in Lots Five (5) and Six (6) of the Squire Chapman Subdivision to the City of Shreveport, Louisiana, securing the same.

"Third: It is agreed between the parties hereto that the said mortgage note described in the preceding paragraph shall be held by the said party of the first part in pledge, and as additional security as aforesaid, under the conditions hereinafter set forth:

"In consideration of the payment of One Thousand ($1,000.00) Dollars, represented by

the credit memorandum hereinabove described, and in consideration of the delivery to him of the additional security hereinabove described, the party of the first part has and does by these presents extend the payment of the said Six Thousand and no/100 ($6,000.-00) Dollar mortgage note for a period of six (6) months from September 10th, 1928.

"It is further understood and agreed that should the party of the second part, or either of them, pay to the party of the first part on or before the expiration of the six months extension of said note, as hereinabove granted, one-third (⅓) of the balance due thereon plus the accrued interest as of date of such payment the party of the first part binds and obligates himself to extend the payment of the balance that shall be due upon the said Six Thousand ($6,000.00) Dollar note after such payment for an additional period of six (6) months from the date of expiration of the extension herein granted. Should the parties of the second part fail or neglect to pay one-third (⅓) of the balance at the end of such six months period, and the interest accrued thereon, then the said Six Thousand and no/100 ($6,000.00) Dollar note shall mature at the end of said six months extension from September 10th, 1928.

"The parties of the second part, W. W. Campbell, A. C. McClelland and E. C. Montgomery, specifically consent to the extension herein granted, and waive all notice of nonpayment, protest or extension made upon said note.

"Thus done and signed, in duplicate, at Shreveport, Caddo Parish, Louisiana, in the presence of the two undersigned competent witnesses, on this the 15th day of October, Nineteen Hundred Twenty-eight.

"A. P. Peyton,
"Party of the First Part.
"W. A. Robinson
"W. W. Campbell
"E. C. Montgomery
"C. A. McClelland,
"Parties of the Second Part.

"Attest:
"R. C. Cochran
"I. C. O'Leary"

Without repeating the significant expressions in the above agreement, it suffices to say that it shows so plainly that the lumber company was no party to this transaction, that A. P. Peyton, an intelligent, experienced business man, represented in the matter by able counsel, could not reasonably believe or contend, after its execution, that the $6,000 note was the note of the Robinson-Slagle Lumber Company, Inc., or could have been made for its benefit. We cannot conceive of any such arrangement being consistent with the terms of the above agreement. As the acceptance, in part payment of this note, of the $600 Hinton note took place after the execution of the above contract, we are constrained to find that Peyton accepted the Hinton note with full knowledge that it was the property of the lumber company and that it was being applied to the payment of the personal obligation of W. A. Robinson.

The agreement quoted above was found after the institution of the receivership, on March 24, 1932, among the papers of Robinson in his desk at the office of the lumber company. O. L. Thomas, manager for the receivers of the Robinson-Slagle Lumber Company, Inc., testifies positively, in chief and in rebuttal, that Peyton, when apprised of the finding of this contract, made the statement to him that Robinson was a fool for keeping that contract. Peyton's denial of having made this remark is hardly strong enough to carry conviction. It is as follows:

"A. Well, I remember mentioning something like that.

"Q. Well, did you make any such remark? A. I don't remember making any such remark to Mr. Thomas. I might have been surprised at his having it, but as far as making a remark about Mr. Robinson being a fool for leaving it there, don't think I did."

Peyton does not contend that he did not know that the Hinton note was the property of the lumber company. The $6,000 note did not appear as an entry on the books of the lumber company and its existence was not known to it until after the discovery of the above agreement. When Thomas, manager for the receivers, learned of its existence, he demanded it of Robinson, who turned it over without protest.

The value of this note is disputed, plaintiffs contending that it is worthless, and defendant that it has a material value. The testimony indicates that the makers and indorsers are not now financially solvent, but the note is secured by mortgage on sixteen lots near the Agurs section of Shreveport, on what is known as Douglas Island. They are located just across Cross bayou, in close proximity to the city. We are satisfied that almost three acres of ground so close to the business district of a large city has a material value.

The contention that the lumber company is retaining this note, and at the same time seeking to recover from Peyton the part of the consideration paid for it, is refuted by the testimony in the record that in the prior suit the note was tendered to Peyton in open court, and the tender being refused by him, the note was deposited in the registry of the court. It would thus appear that the company has disavowed any ownership in the note and any intention of claiming any interest under it. Having tendered and deposited it in the prior suit, it is not now in possession for tender in the present action. Furthermore, were such tender possible, it appears from the rejection of a similar offer by Peyton in the prior suit that such a proffer in this case would be a vain and useless thing.

We have no difficulty in determining that the $6,000 note was what it purported to be —the obligation of its makers and indorsers. The burden of proving to the contrary rests upon defendant, who makes that special defense. Singularly, neither the makers nor indorsers were called to testify. It would seem, if the note was the bona fide obligation of the company, that there would be no hesitancy on the part of Peyton in calling upon Robinson so to testify, and that Robinson would welcome the opportunity of explaining the dubious transaction. It is true that the testimony shows the lamentable fact that this company, like so many others, was most loosely managed by its board of directors. The whole conduct of its affairs was turned over to W. A. Robinson, who seems to have been permitted to do about as he pleased with the affairs of the company. He permitted practically all its employees to become heavily indebted to the concern and was himself its debtor in a large amount at the beginning of the receivership. The employees were permitted to make purchases and charge same to the company; and it is shown that in certain specific cases that, in order to facilitate the sale of the company's property, title to real estate belonging to the company was taken and held in the name of Robinson, and that these facts were generally known, and were known to Peyton.

Peyton testifies that he was told by Robinson that this $6,000 note was in reality executed for the benefit of the company, which had in the past sold, and expected in the future to sell, large quantities of material to Montgomery and McClelland who were engaged in the real estate business and the construction of houses. It may be that Peyton acquired this note believing that to be true. An indication to the contrary is that the testimony strongly suggests that the note was purchased by Peyton from a third party at a discount. At that time the Robinson-Slagle Lumber Company, Inc., was a going concern. There appears no reason why its obligations should be sold at a material discount.

Whatever the belief of Peyton was at the time of his acquisition of the note, it is bound to have been dissipated at the time of the execution of the contract quoted above, which shows too plainly for argument that the parties to it knew and recognized the obligation to be that of Robinson. It is possible that when Peyton received the $600 Hinton note in part payment of the larger note, he believed it to be a bona fide transaction, and that Robinson would protect the lumber company from loss. However, it is a rule, too well established to require citation, that a person who accepts the property or money or assets of a corporation, in payment of the personal obligations of its officers, does so at his peril and is put upon inquiry. In such a case he is not protected by the mere assertion of the officer interested. Peyton contends that he was justified in drawing the inference, from the manner in which the affairs of the corporation were conducted by Robinson, that this transaction was authorized by the corporation. The existence of any such inference, at the time of the delivery of the Hinton note, is dissipated by the positive actions of the parties.

If the delivery to Peyton of the $600 note, under Robinson's instructions, had been in good faith, there was no occasion for the false entries. If Peyton had believed that the $6,000 note was the obligation of the lumber company, that fact would certainly have been evidenced by some provision in the agreement quoted above. Inference must yield to positive facts and positive testimony. We do not think that the inference in this case can have any other effect than to establish the good faith of Peyton in the transaction. We are satisfied that he knew nothing of the entries made upon the books of the company. However, we do not consider the question of his good or bad faith material, in that the Code provides that the obligation to return that which is unduly received endures, whether it is received knowingly or through error. As stated above, we are satisfied that though he believed the transaction a valid one, he accepted the property of the lumber company in payment of Robinson's

debt at his peril and must suffer the consequences of the lack of a real foundation for his belief.

■ We find the facts to be: That defendant knowingly accepted a note, the property of the Robinson-Slagle Lumber Company, Inc., in payment of the personal debt of its president and manager; that this payment was totally unauthorized by the directors of the company; that Peyton has collected on that note the sum of $625.91, which rightfully belongs, and should have rightfully been paid, to the lumber company. Under the plain terms of our Civil Code, as quoted above, this constitutes a quasi contract and imposes an obligation on the part of Peyton to return to the plaintiff the above sum, rightfully belonging to it.

We find no merit in the plea of estoppel, which is overruled.

For the reasons above assigned, the judgment appealed from is reversed and judgment is now rendered in favor of F. E. Roney, receiver of the Robinson-Slagle Lumber Company, Inc., who, since the institution of this suit, has replaced the original receivers and has been made the party plaintiff herein, and against the defendant A. P. Peyton in the full sum of $625.91, with interest thereon at the rate of 5 per cent. per annum from the 9th day of April, 1931, until paid, together with the costs of both courts.