## W. L. Thomas v. Fin & Feather Club.

### No. 2323.    Decided December 16, 1914.

**1.—Overflow of Land—Prescription—Contract.**

The overflow of land by the lake created by a dam erected by a fishing club having been done in pursuance of a contract by the owner giving the club such right in consideration of a right of fishing in the waters of the lake granted by the club to such proprietor, neither party afterwards acquired right of overflow or of fishing by prescription,—their rights depending on the contract.    (P. 495.)

**2.—Artificial Lake—Contract—Altering Status.**

An artificial lake having been created by defendant, partly upon land of another overflowed by the latter's consent, the owners of the dam had no right to change the conditions by lowering it and drawing water from the lake after the owner of the adjacent flooded lands had adjusted his improvements and uses thereof to the condition caused by the lake so as to be damaged by such change.    (P. 495.)

**3.—Flooding Land—Contract—Easement—Appurtenant to Land.**

The rights in an artificial lake granted to a fishing club by the owner of the land in agreeing to the flooding thereof by such lake vested in the club an easement appurtenant to the land. The grantee of such overflowed land took it subject to the encumbrances and limitations with respect to fishing rights granted in the club lake imposed on his grantor by the latter's contract with the club.    (P. 495.)

**4.—Artificial Lake—Fishing Rights—Contract—Damages.**

The owner of land, by contract with a fishing club, permitted them to raise the dam of an artificial lake maintained by them so as to overflow and make a part of the lake portions of his land, including a natural slough thereon in which he had theretofore enjoyed fishing rights. In consideration he was granted the right to fish in all the waters of the lake, bringing guests with him, without becoming a member of the club or paying dues therein. Later the club cut its dam so as to discontinue the flooding of his premises. In an action by such land owner for damages from such act, it is held:

(1)    Plaintiff was entitled to recover as damages the difference between the market value of his land as it existed before the dam was cut and that afterwards.

(2)    In determining such difference the right of plaintiff to take fish from the portion of the lake which covered his land or to use that part of the lake for profit or pleasure might be considered.

(3)    Since the agreement excluded him from selling any fishing or hunting rights in such water, he could not recover damages sustained in making improvements to enable him to sell such rights.

(4)    The club having the right to control and take fish in that part of the lake and to terminate the contract between it and the owner, did so and put an end to the agreement by cutting the dam; and plaintiff was not entitled to damages because thereby fish were prevented from entering his part of the lake.    (Pp. 492-497.)

Error to the Court of Civil Appeals, Fifth District, in an appeal from Dallas County.

Thomas sued the Fin & Feather Club, and recovered judgment. On defendant's appeal this was reversed and rendered against plaintiff, who thereupon obtained writ of error.

*Leake, Henry & Robertson,* for plaintiff in error.——Where a land owner by building a dam on his own premises has created an artificial lake on his own land, together with the land of another adjoining, and the right to maintain the artificial lake has become perfected by prescription, the other land owner has a mutual prescriptive right to have the lake on his premises continued so long as the prescriptive right of the person maintaining the lake to flood the adjoining property is asserted, and particularly when the adjoining land owner has incurred expense on the faith of the level of the lake as maintained during the prescriptive period, and through the maintenance of the artificial lake lost a natural lake existing prior to the artificial lake.  Kray v. Muggli, 87 Am. St., 332; Smith v. Youmans, 37 L. R. A., 285; Matthewson v. Hoffman, 77 Mich., 421, 6 L. R. A., 349; Balknap v. Trimble, 3 Paige, 577; Murchie v. Gates, 78 Me., 300; Shepardson v. Perkins, 58 N. H., 354; Burk v. Simonson, 104 Ind., 173, 54 Am. Rep., 304; Townsend v. McDonald, 14 Barb., 460, 64 Am. Dec., 508; Pewaukee v. Savoy, 50 L. R. A., 836; 9 Ballard on Real Property, sec. 722; Caser v. Hoffman, 44 L. R. A., 728.

It was submitted to the jury to determine whether the injury to plaintiff's land was temporary or permanent in its character, and the proper measure of damages in either case was given to the jury in charge by the court; the jury having determined the issue of fact that the injury to plaintiff's land was permanent, and the evidence being sufficient to sustain the verdict, and demanding this verdict, the verdict of the jury can not be set aside.  Pacific Express Co. v. Lasker R. E. Assn., 81 Texas, 81; Owens v. Mo. Pac. Ry. Co., 67 Texas, 679; Fort Worth, etc., Ry. Co. v. Hogsett, 67 Texas, 685.

The exclusive and continuous possession of an easement for a period of ten years is presumptively under claim of right and establishes an easement by prescription, which prescription, especially when coupled with facts raising a condition of estoppel, produces a correlative right on the part of the servient estopped by prescription to the continued maintenance of the easement.  22 Am. & Eng. Ency. of Law, p. 1202; 1 Cyc., p. 1146; Burch v. Blair, 41 S. W., 547, 19 Ky. Law Rep., 641.

The property in fish belongs to the owner of the land covered by the water in which the fish are found, and the undisputed evidence in this record showing that the defendant wilfully trapped the fish from the plaintiff's premises into its own possession, the defendant is responsible to the plaintiff, as charged by the court, for the value of the fish so wrongfully obtained from the plaintiff.  13 Am. & Eng. Ency. of Law, p. 556; Commonwealth v. Follett, 164 Mass., 477; Commonwealth v. Purley, 130 Mass., 469.

The appellate court erred in holding that the written contract between M. K. Bateman and wife and the defendant in error interrupted

the running of the prescriptive right of the defendant in error to maintain the lake on Bateman's premises and to flow the land which said prescriptive right had begun to accrue prior to the existence of the said contract. Bright v. Dunn, 15 S. W., 7, 12 Ky. Law Rep., 689; Zell v. Universalist Society, 119 Pa. St., 390, 4 Am. St., 654; Tracey v. Atherton, 36 Vt., 503; L. Realty Co. v. Johnson, 66 L. R. A., 439; Sterling v. Jackson, 13 Am. St., 405, 410-416; Heiskell v. Cobb, 11 Heisk., 638; Commonwealth v. Chapin, 16 Am. Dec., 389; 8 Am. & Eng. Ency. of Law, p. 711; 19 Cyc., p. 998.

*Charlton & Charlton, B. F. Word,* and *Walter F. Seay,* for defendants in error.—The uncontroverted evidence shows that the defendant was under no legal obligation to maintain and hold for plaintiff the water upon the plaintiff's land at the time it was drawn off, and a verdict should have been directed for defendant. Texas Ry. Co. v. Wilson, 83 Texas, 153; Hall v. City of Austin, 20 Texas Civ. App., 59; Klein v. Gehrung, 25 Texas Supp., 233; Hensler v. Boyd, 48 Texas Civ. App., 494; Murray v. Dickson, 123 S. W., 179; Bender v. Brooks, 103 Texas, 329; I. & G. N. Ry. Co. v. Bost, 2 App. C. C. (Willson), par. 383; Lake Drummond C. & W. Co. v. Burnham, 17 L. R. A. (N. S.), 945, and note thereunder; Mason v. Shrewsbury & H. R. Co., L. R. 6 Q. B., 578; note to Pewaukee v. Savoy, 50 L. R. A., p. 841, on Reciprocal Rights, and p. 839 on Prescriptive Rights; 3 Farnham on Waters and Water Courses, pp. 2402-2403; Jones on Easements, sec. 6.

If Fin & Feather Club acquired a right by prescription to back the water on the land now owned by Thomas, neither Thomas nor his grantors acquired a reciprocal right to have said back water maintained on said land, and can not compel Fin & Feather Club to maintain its dam for that purpose. 3 Farnham, par. 819; 17 L. R. A. (N. S.), 945; notes to 50 L. R. A., 839, 841.

When the ownership of the land is in one person and the ownership of the water in another, the fish belong to the owner of the water. Turner v. Town of Hebron, 14 L. R. A., 386.

MR. CHIEF JUSTICE BROWN delivered the opinion of the court.

The parties plaintiff and defendant have failed to inform the court whether the dam of the club was constructed across a creek or slough or embraced a depression in the land and constructed so as to cause the water to cover that depression. It does not appear whether the land owned by Thomas bordered on the lake at any point other than the slough on which he claims to have had a lake which existed prior to the construction of the dam. We must therefore dispose of this case with reference to the effect upon Thomas' rights and interests connected with the slough and the lake of the club only so far as it affected that right.

In the year 1894 J. H. Gaston owned a tract of land in Dallas County, which embraced the land owned by the plaintiff in error, Thomas, on which a small lake existed. In that year the Fin & Feather Club, with the consent or acquiescence of Gaston, constructed a dam, the effect of

which was to raise the water so as to affect the existing lake, and also to overflow and embrace the slough in which Thomas claimed a right to fish. In fact, Gaston's right embraced all of the land about which there is controversy in this suit.

In 1904 Gaston sold and conveyed to Bateman the land, including all that is here in controversy. At that time the dam had been erected and the water of the lake covered the same ground that it did when Thomas bought the land from Bateman. By oral agreement Bateman had the right of fishing in the lake. On the 20th day of April, 1904, Bateman and wife entered into a written agreement with the fishing club by which the right of Bateman in the waters of the lake were expressed as follows:

"State of Texas,
County of Dallas.

"This agreement this day entered into by and between Fin & Feather Club and Marvin K. Bateman and his wife, Luci Belle Bateman, and W. H. Steele, witnesseth:

"1. The said Marvin K. Bateman and his wife, Luci Belle Bateman, and W. H. Steele have and do hereby grant and convey unto the Fin & Feather Club for the benefit of the members thereof, and upon consideration hereinafter stated, the exclusive rights and privileges of fishing and hunting in the slough or branch known as Gaston slough, which runs into the open lake of the Fin & Feather Club from a point where said slough or branch enters the grounds and waters of said club, up and along said slough or branch to the spring on our premises acquired from John H. Gaston et al., April 9, 1904, Thos. Freeman survey, covering a distance of about a half mile. The members of said Fin & Feather Club under this grant shall severally enjoy the rights and privileges herein granted to said club, and said privileges shall be exclusively enjoyed by the membership of said club, and no one else shall be permitted to exercise such rights and privileges; provided, however, that said Bateman and Steele shall reserve the rights for themselves and guests to fish and hunt in and on said slough on their premises at pleasure and without paying to the club any fee or charge on account of such guests. Such guests must be accompanied by either Mr. Steele or Mr. Bateman.

"2. In consideration of the grant of the rights and privileges made by said Bateman and his wife and said Steele, the Fin & Feather Club hereby grants to said Marvin K. Bateman and W. H. Steele all the rights and privileges of membership in the Fin & Feather Club, free of cost to them save and except the right of being a stockholder or director in said club, and of participating in the corporate action and proceedings of said club. That is to say, the said Bateman and Steele shall enjoy the fishing and hunting privileges of the club and the privileges of the club house and grounds the same as any other member, and for the exercise of such privileges the said Bateman and Steele shall

pay no dues, and are required to hold no stock. Such privileges, however, are to be exercised under the rules and regulations of the club, as applicable to general membership.

"3. It is agreed on the part of the said Marvin K. Bateman and his said wife and W. H. Steele, and on the part of the Fin & Feather Club that the grant of privileges on the part of each to the other herein made shall be determinable by either party at pleasure upon giving thirty days written notice to the other party. And the said Bateman and Steele agree that they will diligently endeavor to prevent poachers from fishing and hunting in and on said slough, and that said club shall also have the right to prevent poaching, and that all parties hereto shall cooperate to this end.

"In witness whereof the parties hereto have signed their respective names hereunto, the said Fin & Feather Club acting by and through its duly authorized president, C. F. Carter, this 20th day of April, 1904.

"(Signed)  FIN & FEATHER CLUB,<br>
"By C. F. Carter, President.<br>
"M. K. BATEMAN,<br>
"LUCI BELLE BATEMAN,<br>
"W. H. STEELE.

"(Duly acknowledged on the 20th day of April, 1904, before J. H. Jackson, a notary public, Dallas, Texas, and also J. L. Ross, notary public, Dallas, Texas, and duly recorded in volume 323, page 528, Deed Records, Dallas County, Texas.)"

The agreement was acknowledged according to law by Bateman and wife and recorded. The evidence discloses no disagreement between the club and Gaston or Bateman.

On the 8th day of September, 1908, Bateman sold the land to Thomas, at which time the club's dam was in existence as it was originally constructed, and the water of the lake occupied the same position as it did when the dam was cut so as to drain the lake as hereafter stated.

Thomas made some improvements about the lake, making arrangements for fishing and sold fishing rights in the waters of the bayou. He made arrangements to use it as a source of profit to him, and was engaged in so doing over the objection of the club when a cut in the dam was made, which reduced the water below its former level so that it destroyed the value of the bayou as a fishing point. The effect of the draining of the lake was to take from this bayou and from a part of the land the water which had been supplied by the lake of the club, and left that part of the land, or some of it, in an unprofitable condition, being boggy and unavailable for any practical use.

Thomas brought this action to recover from the defendant club the damages occasioned to him from injury to his property by this drainage of the lake. He alleged the destruction of his fishing right out of which he had prepared to derive a revenue, also the value of the fish which he had lost through a device constructed and put into the lake by the club, and other injuries before stated.

The judgment of the District Court was reversed and judgment entered by the Court of Civil Appeals. This application presents to this court for revision and correction errors of law charged to have been committed at the trial.

The question of prescription is not involved in this case, because it is shown beyond doubt or controversy that there was a positive verbal agreement on the part of the club with Gaston, and a written contract with Bateman. Therefore we will not discuss the question as to whether the prescriptive right, if it had existed in the fishing club, would have given a reciprocal right in Thomas to require the maintenance of the dam.

The fishing club constructed its dam in such manner as to cause the water which it impounded to raise the level of the water in the bayou in which Thomas' lake was formed and existed, and this condition was maintained by consent of all the parties for a number of years. In fact, it was observed by all until the act of the club by which it drained off the water, thereby lowering the water in Thomas' lake and bayou, and, as he claims, causing great injury and damage to his property.

We regard it as a well settled proposition that when by consent or otherwise water is thus impounded by artificial means, as by a dam, in such way as to affect adjoining lands, and after the parties owning adjacent lands have adjusted their improvements and uses of their lands to the condition caused by the lake, as in this instance, the owners of the dam have no right to change the conditions by drawing the water from the lake in such a manner as to cause damage to the property of the adjacent land owner. Belknap v. Trimble, 3 Paige (N. Y.), 577; Matthewson v. Hoffman, 77 Mich., 420, 6 L. R. A., 519, 43 N. W., 879; Village of Pewaukee v. Savoy, 103 Wis., 271, 50 L. R. A., 836, 79 N. W., 436; Kray v. Muggli, 84 Minn., 90, 87 Am. St., 332, and note, 86 N. W., 882. Many cases could be added.

The agreement between Bateman and wife and the fishing club with regard to the use of the lake was appurtenant to the land, and vested in the club an easement to which Thomas' title was subject as it was in the hands of Bateman. Neither party had exercised the power reserved in the contract to annul the privilege of fishing in the lake and membership of the club, which were secured by the said contract. Therefore we must consider this case as if the action were brought by Bateman and wife, since Thomas took the estate with all its encumbrances and limitations.

It is difficult for us to understand upon what ground the damages were recovered. But we are of the opinion that the Court of Civil Appeals erred in holding that Thomas had no right to require the club to maintain its dam at its proper stage. It is therefore necessary for this court to reverse the judgment of the Court of Civil Appeals in that respect, for we have no doubt that land owners, under the circumstances of this case, have the right in law to have the conditions created by the construction of the dam maintained in so far as it was necessary to the preservation or protection of rights which accrued by the erection of the dam, and the continuance of which depend upon the maintenance

.of the dam. Thomas had the right to recover from the fishing club the damage occasioned to him through the drawing off of the water .from the lake. The damages must be confined to the proximate result of the action of the club in lowering the level of the water.

In this we do not have reference to any claims for vindictive damages, if the facts should justify any such claim, nor to any claim for damages which Thomas may have against the club because of their depriving him, if they did so, of any fish that would have naturally remained in the waters of his lake.

We do not find any evidence of damage done to Thomas by the drawing off of the water from the lake, except in general terms he says it reduced the market value of his property, and some other general expressions of that kind. But it does not appear in what manner that was done, except that he alleges that the lake was a valuable part of his property right and the act of the club complained of affected its salable value.

The question which lies at the bottom of this matter is, what was the effect of the agreement between Bateman and the club? It did not give the club the right to destroy the lake of Bateman, by discharging the water from its own lake and thereby changing existing conditions. But that contract did give to the club the exclusive right of fishing in that water and the right to exclude from the water for the purpose of fishing or other amusement, any persons except those. named in the contract.

The contract gave to Bateman and Steele the privilege of membership of the club without the payment of dues and with the right to fish and hunt in any part of the club's grounds. It also gave to the club the exclusive right to control that part of the lake which was formed by elevating its water level so as to raise the water in the bayou in question. Bateman, and Thomas, through Bateman, had the right to fish in that portion of the water or any part of the lake of the club, and they had the right to invite their friends and persons visiting them to join them in such sport. But they were expressly excluded from selling any fishing or hunting rights in said water. Therefore Thomas is not entitled to recover any damages he may have sustained in making improvements to enable him to sell to others, rights to fish and hunt in any part of the lake. Having no such right, he could not lawfully have made the profit he claims. Therefore that is not an element of damage for which he can recover.

The agreement between Bateman and the club had not been revoked or set aside by either party to this action, but was annulled by the action of the club in draining the lake. And we must determine this case as if there was no question, and there is none, of the binding force of that agreement upon the parties.

This court is unable to determine the basis upon which the damages were assessed, but under the agreement between Bateman and the club the latter had full control and ownership of all the fish in the lake, and. we are of the opinion that the facts do not show that Thomas is entitled

to recover anything for fish which may have been induced to leave his waters or prevented from entering, if such was the case.

We are of opinion that the Court of Civil Appeals erred in rendering judgment against the plaintiff, Thomas, and we reverse that portion of the judgment of said court and remand the case to the District Court for trial under the following instructions as to the measure of damages in case Thomas shall recover.

The plaintiff is entitled to recover the difference in the value of his land as it existed before the dam was cut and its value as it is since the cutting of the dam. In determining that issue the jury may consider any decrease in the market price of the land, also the value to Thomas of the right to take fish from that portion of the lake which covered his land; as well as the right to use that part of the lake for profit or for pleasure. But he is not entitled to compensation for any supposed number of fish which may have been prevented from entering his part of the lake. At the time that act is charged to have been done, the club had the right to control that portion of the lake and to take fish from it. Either party had the right to terminate the contract between Bateman and the club, and the cutting of the dam by the club operated to put an end to that agreement.

Judgment of the Court of Civil Appeals is reversed, and cause is remanded.

MR. JUSTICE HAWKINS, concurring.

The report of the decision of the Court of Civil Appeals for the Fifth Supreme Judicial District in this case may be found in 138 S. W., 150. It contains a fuller statement of the pleadings, physical conditions, issues, etc.

The question of the right of plaintiff to recover was submitted to the jury upon the single issue of a "prescriptive right" in the club to maintain the lake on plaintiff's land, though the charge injected into that issue an element of estoppel based on evidenec to the effect that such maintenance of the lake had caused sediment to fill the channel of an ancient slough therein; said charge being predicated upon the theory that, as such maintenance unquestionably began as a trespass and continued for ten years, it gave the club such prescriptive right, unless the Gaston agreement and the Bateman contract with the club each rendered such maintenance not "adverse" to the land owner, thereby, together preventing such maintenance from ripening into said prescriptive right; and, further, that if the club had acquired such prescriptive right, Thomas, as owner of the land formerly owned in turn by Gaston and Bateman, had a reciprocal right to require the club to maintain such lake on his land.

This issue as to the existence of such prescriptive right divided the Court of Civil Appeals, the majority holding against plaintiff thereon, reversing the judgment of the District Court in his favor, and rendering judgment against him.

Vol. 106-32.

Under these circumstances I desire to state my views upon that issue somewhat more fully than they are reflected in the terse yet comprehensive treatment given it in the foregoing opinion by Chief Justice Brown.

Could the club, prior to the cutting of its dam and the draining of plaintiff's portion of said lake, have successfully asserted, as against Thomas, a prescriptive right to maintain said lake on a portion of his land? That depends upon whether the club's maintenance thereof was or was not, for ten years, "adverse" to the owners of said Thomas tract. Texas Western Ry. Co. v. Wilson, 83 Texas, 155, 18 S. W., 325.

Gaston bought that tract in 1894. While he owned it the club built upon its own land a dam which backed water up, filling Gaston's part of the slough, spreading the waters, and creating on his land a lake of four or five acres. There is no controversy but that, in originally flowing Gaston's land, the club acted without authority or permission from Gaston, or that maintenance by the club of said lake on the Thomas tract for more than ten years continued to be "adverse" to the owners of that tract, unless the Gaston agreement and the Bateman contract, in turn, and the course of conduct by and between the club and the land owners, thereunder, respectively, rendered such maintenance not "adverse" to said owners.

Said agreement and said contract were substantially alike in so far as they severally bear upon the issue of a "prescriptive right" in the club. Gaston, while owning said land, and after said lake had been formed thereon, orally agreed with the club that it might use his portion of said lake for hunting and fishing, so he would not be annoyed by anybody coming through, but that he might use his part of the lake, for himself, for fishing and hunting, and, accordingly turned over to the club control of the lake on his land. Gaston sold said land to Bateman in April, 1904, and Bateman sold it, in September, 1908, to Thomas. Plaintiff's portion of the lake was drained early in 1909.

The Bateman contract gave to the club, for its members, "exclusive rights and privileges of fishing and hunting in the slough, or branch, known as Gaston slough, which runs into the open lake of the Fin & Feather Club," but provided that "Bateman and Steele shall reserve the rights for themselves and guests to fish and hunt in and on said slough on their premises at pleasure, without paying to the club any fee or charge on account of such guests," and stipulated that "said Bateman and Steele shall enjoy the fishing and hunting privileges of the club and the privileges of the club house and grounds," without being required to hold stock or pay dues.

Neither the Gaston agreement nor the Bateman contract in express terms, specifically authorized or permitted the club to so flood any portion of the Thomas land or to maintain a lake thereon, and the provision in said contract "that the grant of privileges each to the other herein made shall be determinable by either party at pleasure upon giving thirty days written notice to the other party," strongly suggests that said contract was not intended to extend to secure to the club such

authority or permission; nevertheless, as the lake had then been formed upon said land, the effect of said agreement and of said contract, as a matter of law, was to place Gaston, and Bateman, in turn, in the attitude of acquiescing in and consenting to the maintenance of said lake, over said slough, and as said lake then stood on said land, at least to such extent as to prevent such maintenance thereof from being "adverse" to the owners of said land, while such agreement and such contract, respectively, were in force.

In other words, the Bateman contract, primarily, was merely a fishing and hunting privilege contract, with semi-reciprocal features, and that may have been, and, it seems to me, probably was, the ultimate intention and purpose of the parties thereto in making it; nevertheless, as a matter of law, its necessary and further effects were to create and continue an acquiescence and consent upon Bateman's part to the maintenance of the lake on his land, substantially as it then stood, and also to operate as a clear recognition by the club of Bateman's right, as owner of the land, to use such portion of the lake for the designated purposes of fishing and hunting by himself and Steele and their guests, all so long as such contract might remain in force. The Gaston agreement evidenced a like acquiescence, consent, and recognition of rights upon the part of each party to it. Consequently, the legal effect of the Gaston agreement and of said Bateman contract was to stop the running of time in the matter of "adverse" maintenance of the lake, thus rendering such further maintenance thereof not "adverse" to the owner of the land, the agreement or the contract remaining operative, thereby removing the basis for such prescriptive right, and putting that issue definitely out of this case.

And with it, of course, goes the issue as to the reciprocal right of Thomas to require the club to maintain his portion of said lake. To this extent I concur in the views of the majority of the Court of Civil Appeals, and, in so doing, am in accord with the foregoing opinion of our Chief Justice upon that point.

It follows that plaintiff's right to recover damages must rest solely upon the ground stated in said foregoing opinion, resulting from the status which had so grown up between the club and the owners of the Thomas tract; in which, I think, should be included and specifically here mentioned the fact that the club's maintenance of the lake on the Thomas tract had caused the ancient slough therein to become filled with sediment, thereby destroying the valuable fishing preserve which existed upon that tract before the club erected its dam which caused the formation of said lake thereon.

That portion of said opinion which refers to the adjustment by Thomas of improvements upon his land adjacent to his lake and to adjustment by him of the uses of his land to conditions created by the formation and maintenance of the lake, states the rule correctly, as an abstract proposition, but, inasmuch as the only adjustment by Thomas of his improvements or uses, so far as the evidence discloses, seems to have been made with a view to sale by him of fishing and hunting

privileges in his portion of said lake—the very thing which the Bateman contract inhibited—I do not think such adaptation and improvements come within the rule so announced, and am, consequently, unable to see that said rule applies to the facts of this case, except as related to the filling of the slough with sediment. Plaintiff testified: "I don't know that there is any damage outside of this five acres covered by the water."

Clearly the effect of the Bateman contract was to prevent him, while it was in force, from selling privileges to fish in or hunt on his part of the slough, which, by fair implication, meant his part of the lake; and, since said contract was appurtenant to the land, and seems to have been of record when Thomas bought it, Thomas was likewise bound and restricted by its terms, and so can not recover damages from loss of sales of such privileges. Moreover, this record shows that at the close of the evidence plaintiff, by his attorneys, in open court, abandoned his claim for all such damages. For both reasons it was error for the trial court to submit to the jury that element of damages. Several witnesses, other than the plaintiff, testified, specifically, to the amount of damage done to plaintiff's tract of land by draining off his portion of the lake.

I find in the Bateman contract nothing relating to "amusement," other than fishing or hunting; nothing giving the club "the exclusive right to control" plaintiff's portion of the lake, or "full control and ownership of all the fish in the lake"; and nothing giving to Bateman or Steele "the right to invite their friends and persons visiting them to join them" in fishing or hunting on the premises owned by the club.

I concur in the order made.