**RHOADES v. POINTER.    (No. 798.)**

(Court of Civil Appeals of Texas. Beaumont. May 19, 1922.)

**1. Landlord and tenant ⬅➡331(1)—Petition held to show tenant waived conversion of his share of the crop and sued for proceeds.**

A petition by a tenant alleging that the landlord had sold the crop, including the tenant's share, and unlawfully converted the tenant's half of the proceeds, and asking that the landlord be required to account for the tenant's half of the proceeds, without anywhere charging a conversion by the landlord of the tenant's half of the crop, manifests an election by the tenant to ratify the sale and sue for part of the proceeds instead of suing on the conversion, so that the measure of recovery was the tenant's share of the sale price, and not the market value at the time and place of conversion.

**2. Trial ⬅➡350(4)—Evidence held conflicting as to proceeds of cotton sold justifying submission of special issue.**

In a suit by a tenant to recover his share of the proceeds of the crop sold by the landlord, where the landlord admitted selling part of crop and crediting tenant's account with his share of the proceeds, but the landlord's bookkeeper testified there was a mistake in the account as to the amount received for the admitted sale, there was sufficient conflict in the evidence to justify a special issue requiring a finding as to the amount received from the admitted sale.

**3. Appeal and error ⬅➡1170(10)—Submission of special issue established by uncontroverted evidence is not necessarily reversible error.**

Even though an issue is established by the uncontroverted evidence, the submission thereof in a special issue to the jury is not reversible error unless it appears probable from the record that the same was prejudicial to the complaining party, under Court of Civil Appeals rule 62a (149 S. W. x).

**4. Appeal and error ⬅➡1062(1)—Submission of special issue as to proceeds of cotton sale established without controversy held not prejudicial.**

Even if there was no controversy in an action between a tenant and his landlord as to the amount received by the landlord from the sale of five bales of cotton which he admitted selling, the submission of a special issue to the jury as to the amount received by the landlord from the sale of all of the tenant's cotton, including the admitted sale, could not have misled the jury, and does not require reversal of a verdict for the tenant.

**5. Trial ⬅➡350(4)—Evidence held sufficient to authorize submission of expenses of landlord in selling cotton.**

In an action by a tenant against his landlord to recover the tenant's share in the cotton sold by the landlord, evidence showing that all of defendant's cotton, except five bales which the landlord admitted selling, was in-cluded in a single shipment of cotton respecting which the landlord's books showed the sale price and the expenditures, but did not identify the particular bales belonging to the tenant, *held* sufficient to warrant submitting to the jury a special issue requiring a finding as to the expenses of the sale of the tenant's cotton.

**6. Landlord and tenant ⬅➡331(6)—Evidence held to identify shipment in which tenant's cotton was included.**

Evidence that the landlord had made three separate shipments and sales of cotton, the bales in two of which were all identified by number, and that two of the bales of cotton produced by the tenant were included in the other shipment in which the marks on a number of the bales were obliterated so that they could not be identified, with testimony by the landlord that he thought most of the tenant's cotton was in the shipment in which the marks were blotched, and by his bookkeeper that all of the tenant's cotton was in that shipment, was sufficient to warrant the jury in finding that all of the tenant's cotton was included in that shipment, so that they could base their finding as to the sale price of tenant's cotton upon the sale price for that shipment.

**7. Landlord and tenant ⬅➡331(6)—Evidence held to show landlord received 18 bales of cotton raised by the tenant.**

In an action by a tenant against his landlord for a share of the proceeds of the sale of the cotton grown by the tenant, evidence *held* sufficient to sustain the finding by the jury that the landlord received 18 bales of cotton grown by the tenant, instead of the 19 bales claimed by the tenant or the 14 bales which the landlord admitted receiving.

**8. Landlord and tenant ⬅➡331(6)—Evidence held to sustain finding as to net return from tenant's cotton sold.**

Where the evidence showed the tenant's cotton was in a shipment sold by the landlord for from 32 to 32¾ cents, a special finding by the jury as to the net return of the landlord from that cotton, which, after adding the admitted expenditures as shown by the landlord's books, made the sale price approximately 31 cents, was not excessive under the evidence.

**9. Appeal and error ⬅➡231(4)—Objection to deposition and exhibits as immaterial, incompetent, and misleading does not raise other objections.**

An objection made to a deposition and the exhibits attached thereto as a whole on the ground that they were incompetent, irrelevant, immaterial, and misleading does not show error where the evidence was clearly competent and material, even though it might have been objectionable as hearsay or because the exhibit was not properly proved, especially where the appellant read in evidence depositions containing exhibits which were copies of the identical accounts contained in the exhibits objected to.

Appeal from District Court, Milam County; John Watson, Judge.

---

⬅➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Action by Allen Pointer against A. J. Rhoades. Judgment for plaintiff, and defendant appeals. Affirmed.

Chambers & Wallace, of Cameron, for appellant.

Henderson, Kidd & Henderson, of Cameron, for appellee.

O'QUINN, J. This suit grew out of a farm rent contract between appellant and appellee. The rental contract was that appellant was to furnish the land, teams, tools, etc., and appellee was to work the crop, and it was to be divided equally between them. Appellant was also a merchant and furnished appellee.

Appellee brought suit against appellant, alleging that, after the crop was made, he and his family gathered 5 bales of cotton, which, together with the seed of 4 bales, were delivered to appellant, and the cotton bought by appellant, one-half the proceeds being credited upon appellee's account; that appellee gathered and delivered to appellant 4 other bales, which were not sold, but placed by appellant in his cotton yard; that about August 23, 1918, through an attitude of violence toward appellee, who was a negro, appellant caused appellee to leave the premises and to cease gathering said crop; that appellant then assumed control of said crop and put hands to picking cotton; that after an absence of ——— weeks, through the intercession of other parties and with the promise of appellant that he would not hurt appellee or any members of his family, appellee returned to said premises and finished gathering said crop; that, during the absence of appellee, appellant had gathered some 7 bales of cotton and all the corn; that after appellee's return to the premises he gathered and delivered to appellant 2 more bales of cotton and a remnant of 750 pounds of seed cotton; that appellant had sold the 4 bales of cotton delivered to appellant by appellee and which were not sold at the time appellee was forced to leave the premises, as well as the 7 bales gathered by appellant while appellee was absent, and 2 bales gathered by appellee after his return, making 13 bales of cotton and the seed of 14 bales, and had appropriated appellee's one-half of the proceeds of same to his own use, which was alleged to be the full sum of $1,358.75. Appellee also alleged that appellant was due him $149.75 for special labor performed by agreement between them; that appellee owed appellant an account for merchandise, the amount of which he did not know. Appellee prayed for a balancing of accounts between him and appellant; that said merchandise account be deducted from the aggregate amount appellant owed him for his part of the proceeds of the sale of said crops of cotton, cotton seed, and corn converted and appropriated by appellant, and for the work

and labor done by appellee, which was alleged to be in the sum of $1,433.50.

Appellant answered by general demurrer, general denial, and specially alleged the rental contract as stated by appellee, but further alleged that appellee gathered 5 bales of cotton, which, with the seed, were sold by the parties and appellee's one-half credited to his account; that appellee then abandoned the crop, whereupon appellant had gathered therefrom 9 bales of cotton and all the corn, appellee's one-half of the corn being delivered to him; that appellee refused consent for the cotton not sold by mutual agreement to be sold, and appellant held same until the following year, when, the price having declined, he sold it and credited appellee's account with one-half. The answer also alleged damages against appellee, the nature of which, in view of the verdict, is unnecessary to be stated, but the amount of which, added to the appellee's account, left him indebted to appellant, after deducting his credits from the crop, in the sum of $105.65, for which he prayed judgment.

The undisputed facts show: (1) That appellant was a merchant and cotton buyer at Gause, Tex., during the years 1918 and 1919, and made the contract with appellee for farming the land, as pleaded; (2) that appellant furnished appellee with supplies out of his store, charging the amount of them to appellee's account; (3) that appellee cultivated a crop of corn and cotton, according to contract, and about the last of July began gathering same, and about August 23, 1918, he and his family left the premises and removed elsewhere, appellee claiming that he did so through fear of appellant, by reason of appellant's conduct towards him and his family, which charge appellant disputes, and contends that appellee left for another reason; (4) that, before appellee left the premises, he had gathered and delivered to appellant 5 bales of cotton and the seed of 4 bales, which were sold, and one-half of the proceeds credited to appellee's account; (5) that after appellee left, and while gone, appellant had gathered from said crop of cotton 9 bales, which appellant kept in his possession and afterwards sold, together with the seed from same, and that appellant also had gathered, while appellee was absent, the whole of the corn crop, which was divided; (6) that, after appellee's return to the premises, he gathered and delivered to appellant one more bale of cotton, and a remnant of 750 pounds of seed cotton; (7) that the 9 bales of cotton and seed gathered by appellant during the absence of appellee, as well as the one bale (and seed) gathered by appellee after his return, were sold by appellant in Houston, Tex., and that he kept all the proceeds; (8) that appellant sold all the seed of the cotton in dispute and appropriated the proceeds.

The disputed facts, so far as necessary to

be set out, are: (1) Appellee contends that he gathered and delivered to appellant 4 bales of cotton, with the seed of 5 bales, which were not sold, but the cotton placed in the yard of appellant before appellee left the premises, making 9 bales in all that he delivered to appellant before leaving the premises. Appellant denies receiving the 4 bales, but contends that the 5 first mentioned are all that appellee delivered to him before appellee left. (2) Appellee contends that appellant received in all at least 18 bales of cotton from said crop, 13 of which, with the seed from 14, appellant sold and appropriated the appellee's one-half of the proceeds thereof, which appellant denies, saying that 15 bales constituted the whole of the cotton crop.

The case was tried before a jury upon special issues, upon their answers to which judgment was rendered for appellee; hence this appeal.

In answer to the special issues, the jury found: (1) That 18 bales of cotton were gathered from the rented premises and received by appellant; (2) that appellee's one-half of the net proceeds of the 18 bales of cotton and one remnant of seed cotton, which had not been divided, amounted to $1,223.90; (3) that appellee was entitled to $224.15 as his one-half of the proceeds of the cotton seed sold, and which had not been divided; (5) that appellant owed appellee a balance of $10 for work done; (6) that appellee owed appellant $533.65 on account; (7) that the correct charges by appellant for having the cotton picked and for gathering the corn amounted to $202.50; (8) that appellee was not negligent in failing to gather the cotton with due dispatch, and that appellant had not suffered any damages by reason thereof; (9) that appellee did not appropriate or sell any of the property, as charged by appellant.

[1] By his first proposition appellant complains:

"The court erred in submitting, over appellant's objection, special issue No. 2, requesting the jury to find the net amount for which appellee's one-half of all the cotton was sold, excluding a certain remnant and certain expenses, because it was based upon an incorrect rule for the measure of damages applicable to the case, viz. what such cotton sold for at places and times other than the time and place of conversion; the correct rule being the, market value at the time and place of conversion."

Special issue No. 2 of the court's charge is as follows:

"Deducting the expense of ginning and yardage for the 5 bales sold at Gause, and deducting the expense of ginning, yardage, and charges incident to the shipment, storage, insurance, and sale of the bales shipped and sold elsewhere (but not deducting anything for picking), what was the plaintiff's one-half of the net amount for which all of the cotton sold, including the remnant, the proceeds of which were not divided between the plaintiff and defendant, but excluding the remnant, the proceeds of which were divided, as shown by the evidence?"

To this issue the jury answered:

"Negro's ½ of proceeds 18 B. C. lint cotton & Rem. S. C., $1,223.90."

Appellant contends that appellee's suit is one for damages sounding in tort, and excepted to the above issue as predicated upon the wrong rule for the measure of damages, insisting that the parties were, under the law and facts, tenants in common, and that in such case, if either party appropriates or disposes of the other's share in the common property, he is liable for conversion, and the measure of damages is the value of the property at the time and place of conversion. Without contesting the correctness of the above proposition, as an abstract rule of law, appellee contends that, appellant having sold 13 bales of cotton, the common property of himself and appellee, and having appropriated the proceeds, appellee could elect whether to treat the transaction as a conversion and sue for damages, or ratify the sale and sue for his part of the proceeds, which appellee insists he has done. We think the pleading clearly shows that appellee brings the suit for his one-half of the proceeds of the property sold. He alleges that appellant, in the fall of 1918, sold 13 bales of cotton, and "unlawfully converted and appropriated to his own use and benefit the plaintiff's one-half of the proceeds of such sale"; that, the plaintiff having presented to the defendant purchaser's check for a remnant of seed cotton, the defendant took possession of said check and cashed the same and unlawfully converted and appropriated to his own use and benefit the plaintiff's one-half of the proceeds thereof; that "the plaintiff often before the filing of this suit requested the defendant to account to him for his one-half of the proceeds of the sale of said 13 bales of cotton * * * and said check, * * * all of which defendant failed and refused to do," etc. Appellee's petition, upon its face, shows that the suit was for an accounting and to recover his one-half of the proceeds of the sales of the crop in question. It nowhere charges a conversion by appellant of appellee's half of the cotton, but in every instance alleges that appellant had sold the cotton and the cotton seed and appropriated appellee's one-half of the proceeds of the sales. The assignment is overruled. First National Bank v. Martin, (Tex. Civ. App.) 162 S. W. 1029; Kempner v. Thompson, 45 Tex. Civ. App. 267, 100 S. W. 354; Gould v. Baker, 12 Tex. Civ. App. 669, 35 S. W. 708; 38 Cyc. 81, 82; 1 U. J. 1033.

[2] What we have said disposes of appel-

lant's second proposition. Appellant's third proposition is:

"The court erred in submitting special issue No. 2, *over appellant's objection,* as to what appellant's one-half of the cotton sold for less a given remnant and certain deductions for expenses, because such issues included the amount for which five bales of the cotton were sold by mutual consent, and about which there was no dispute; the fact being established by the pleadings of both parties and the undisputed testimony."

The pleadings and the evidence of the parties show that the first 5 bales of cotton gathered by appellee were delivered to appellant, and that he bought them and credited appellee's account with his one-half of the proceeds, but there is some dispute as to the exact amount that appellee was entitled to and received and as to for what it was received. As to this the evidence was somewhat conflicting. Statements furnished appellee by Mrs. Rhoades, wife and bookkeeper of appellant, showed that appellee was entitled to a credit of $317.31 for his one-half of the proceeds of said 5 bales of cotton, but appellant's ledger, in which appellee's account was kept, was offered in evidence by appellant to show that the item of date August 13th of $72.45, which it appears was for the last of the first 5 bales of cotton in question, was not for one-half of a bale of cotton, but for one-half of a bale of cotton and seed. Appellant's wife testified that said item was not for one-half of a bale of cotton alone, but for the cotton and the seed. It is true that she later admitted that that was an error of hers, but appellant did not so admit or agree that said item was not as shown by his ledger. It therefore was a question of fact as to what appellee was entitled to for the first 5 bales of cotton, and, in view of this conflict, slight as it was, the court did not err in his charge in submitting it to the jury.

[3] Again, it has been held that, though an issue is established by the uncontroverted evidence, the submission thereof in a special issue to the jury is not reversible error, unless it appears probable, as shown in the record, that same was prejudicial to the complaining party. Pac. Ex. Co. v. Rudman (Tex. Civ. App.) 145 S. W. 268 (writ of error denied); rule 62a, Courts of Civil Appeals (149 S. W. x).

[4] In the language of counsel for appellee:

"The identified statements constituted record evidence, which, under the law, the jury should take with them on retiring to consider their verdict; and it will be presumed that the jury had such statements before them in their deliberations. And if, as appellant contends in his brief, said *identified statements established without controversy* appellant's part of the proceeds of the first 5 bales at $317.31, then, since the amount of appellee's part of such pro-

ceeds, as shown by said statements, was in writing and fixed at said sum of $317.31, the jury could not have been misled or confused by the embodying in special issue No. 2 of the issue as to appellee's part of the proceeds of said 5 bales, because they would simply determine the amount of appellee's part of the proceeds of the other 13 bales and the remnant of seed cotton, and to this amount add the $317.-31, his part of the proceeds of said 5 bales."

If the incorporation of said 5 bales of cotton in the issue as submitted was error, we do not believe that same was reasonably calculated to cause, or probably did cause, the jury to arrive at an improper verdict, and hence was harmless error. Henson v. Baxter (Tex. Civ. App.) 166 S. W. 461; Wells Fargo & Co. v. Benjamin (Tex. Civ. App.) 165 S. W. 127; Insurance Co. v. Melott (Tex. Civ. App.) 174 S. W. 700.

[5] By his fourth proposition appellant complains that:

"The court erred in submitting said special issue No. 2 as to what appellee's one-half of all the cotton sold for, less certain deductions for expenses, because there was no competent evidence introduced to show what such expenses were."

We think the undisputed evidence shows that all of the 13 bales of cotton, after the first 5 bales were delivered to appellant, were shipped to and sold in Houston. Mrs. Rhoades, wife of appellant, and his bookkeeper, testified:

"The cotton of the Pointer crop that Mr. Rhoades did not buy was shipped to Garrow, McLain & Garrow, of Houston; it was shipped along with other shipments of cotton. Statements were sent us of the sales made by them. * * * I know that all of the cotton of the Pointer crop, except the first 5 bales, went to Houston."

This was not disputed by any other witness; appellant testifying that he did not know whether any of the 13 bales in question went to Adkinson at Hearne. The Houston account sales in evidence showed the expenses of shipment, insurance, commissions, etc., in regular course of all the bales shipped by appellant, including the 13 bales, and appellant himself testified that said account sales showed the charges and net proceeds. The gin books were in evidence, and they showed the ginning expense of 15 out of the 18 bales. Appellee testified, and it was not disputed by any other witness, that after the first 5 bales were sold, at appellant's suggestion, the other bales were placed in appellant's yard, and on these bales there were no yardage charges. We think the data in evidence showing the expense in regular course on a large number of bales, among which were the 13 in question, were sufficient to enable the jury to determine the average expense per bale with reasonable certainty on the 13 bales. The expense of

ginning and yardage of the first 5 bales appears on the admitted statements furnished by appellant's wife and bookkeeper. Thomas v. Folmar (Tex. Civ. App.) 195 S. W. 879; Underwood v. Security Co., 108 Tex. 381, 194 S. W. 587. The assignment is overruled.

[6] Appellant's fifth proposition complains that:

"The court erred in submitting special issue No. 2, over appellant's objection, because no competent evidence was introduced to identify the cotton in dispute from the other cotton shipped by appellant; the testimony showing that said cotton, with a large number of other bales, was shipped to Hearne or Houston and there sold."

As stated before, we think the undisputed evidence shows that all of the 13 bales of cotton in dispute were shipped to Houston. Mrs. Rhoades testified positively that she knew that all the Pointer cotton, after the first 5 bales, was shipped to Houston. Appellant testified that he kept account of the cotton shipped to Houston by the gin numbers, and that in some of the shipments, in course of transit, some of these numbers were obliterated. These gin numbers are shown in the account sale in column headed "Shipper's Marks and Nos." Mrs. Rhoades testified:

"* * * After Pointer left his crop the cotton was shipped to Houston. I do not know where the first 5 bales went. After the first 5 bales it went to Houston. I know that all the cotton of the Pointer crop except the first 5 bales went to Houston. * * *"

Appellant testified:

"* * * I sold a lot of cotton in October for $32 and $32.75. I can't tell you what was and what was not in that shipment. I shipped most of his cotton down to Houston; his cotton is most all in there, but I can't tell his cotton from the rest. In that list of cotton where the figures are blotched is where I think most of his cotton is. There are no numbers on that one. That sale was made the 10/14/1918. There are several in that which has no gin numbers or shipper's numbers. That [indicating] sale was made 10/7/1918 [evidently meaning 10/14/1918]. No numbers are on lots of that."

Two of the gin numbers of the bales in question are found in the account sales, to wit, No. 776, weight 426, corresponding with No. 776, weight 423, in statement from Bowling's gin book, and No. 835, weight 444, corresponding with No. 835, weight 448, shown in statement from Bowling's said gin book. The evidence shows that when a bale was weighed, and afterwards reweighed, it varied, sometimes losing and sometimes gaining in weight. The account sales show that bales Nos. 776 and 835 were sold on October 14, 1918, for 32¼ cents per pound, and that the "Shipper's Marks and Nos." (gin numbers) were obliterated only on bales sold

on October 14th, and that practically all the cotton sold on said date sold at 32¼ cents to 32¾ cents per pound.

Appellant testified:

"* * * I sold some cotton on that day [March 4, 1919]. That [examining paper] is a copy of account sales returned to me on 62 bales of cotton sold that day. You will see from that what I got, and that is what I allowed the negro. The chances are some of his cotton was in that lot I sold that day, and the chances are that it was not; I don't know."

From the testimony and the data in evidence, it seems practically certain that the 13 bales in question were sold on October 14, 1918, two of said bales, Nos. 776 and 835, being shown in the account sales to have been in the list of cotton sold on that day, and the only list upon which the "Shipper's Marks and Nos." were missing are those sold on that day. None of such numbers are missing from any of the other lists of cotton sold either on October 21, 1918, or March 4, 1919. Besides, appellant testified:

"In that list of cotton where the figures are blotched is where I think most of his cotton is."

Furthermore, appellant, in the fall of 1918, long before the sale of March 4, 1919, when the price of cotton had materially declined, offered appellee $260 in settlement. He would not have been likely to have made that offer to settle if the cotton was still on hand and prices constantly going lower.

The jury were allowed to indulge all reasonable inferences from the facts and circumstances shown them by the evidence, and we think that from same they could determine with reasonable certainty when and for what price the cotton in question was sold. Cotton v. Cooper (Tex. Civ. App.) 160 S. W. 601; Railway Co. v. Cook (Tex. Civ. App.) 214 S. W. 543.

[7] Appellant's sixth assignment is overruled. He complains that the jury's finding that 18 bales of cotton were produced on the rented premises is contrary to the undisputed facts as shown by the books of the cotton gins where the cotton was ginned asserting that the said gin books only showed 13 bales to have been ginned. Appellant's statements in argument in this brief do not coincide with his positive assertions in his proposition. For instance, in his brief he says:

"The books from the Gause Gin Company show there were 10 bales ginned in that gin during the season of 1918 in the name of either appellant or appellee having a total weight of 4,721 pounds."

"The Bowling Gin statement showed that during that season that 8 bales were ginned, with a total weight of 3,847 pounds.

"The total of both gins was 18 bales, with a total weight of 8,568 pounds."

Appellee alleged and contends that 18 bales were produced. Appellant alleged and

contends that 15 bales were produced. It was agreed that the first 5 bales were sold by mutual consent. Appellee testified that after the sale of the first 5 bales he delivered 4 bales to appellant before appellee left the premises. Appellant pleaded and testified that he had 9 bales gathered from the rented premises during appellee's absence from the premises. It is undisputed that appellee gathered and had ginned another bale after he returned to the premises. This, according to appellee, makes 19 bales, and, according to appellant, only 15; appellant denying that appellee delivered to him but 5 bales prior to leaving the premises.

Appellant in his brief admits that 18 bales were ginned at the two gins, but says that 3 bales were from other rented premises. He testified that he got 3¾ bales off of the Henry Luce premises and bought some cotton off of streets to make out the fourth bale. If this was true, then, according to his contention, only 14 bales were received from the rented premises. Appellee insists that he delivered 9 bales to appellant before leaving the rented premises, 5 of which were sold and 4 that were placed in appellant's cotton yard, and that he (appellee) gathered and delivered one other bale to appellee after he (appellee) returned to the premises. Appellant admits that he gathered 9 bales while appellee was gone, so that, according to the contention of appellee, there were 19 bales gathered. A witness for appellant, Luce, testified that he knew of one bale that appellant got from other rented premises. So the jury must have believed that there were 19 bales, and that one of them came from the other rented premises, and found 18 bales for appellee. We think their finding is sufficiently supported by the record. Underwood v. Security Life Annuity Co., 108 Tex. 381, 194 S. W. 585; 194 S. W. 587; Cartwright v. Canode, 106 Tex. 502–507, 171 S. W. 698; Wininger v. Railway, 105 Tex. 56, 143 S. W. 1150; Railway Co. v. Decatur Cotton Seed Co. (Tex. Civ. App.) 193 S. W. 396.

[8] Appellant's seventh proposition asserts that the verdict of the jury, wherein it found, in answer to special issue No. 2, that the amount for which one-half of the cotton sold was $1,223.90, after deducting certain expenses, is contrary to the undisputed evidence.

From the data and evidence in the record heretofore discussed and pointed out, it is practically certain that the 13 bales in dispute were sold in Houston on October 14, 1918. As before stated, two of said bales, Nos. 776 and 835, appear in the account sales for that day, and appellant testified:

"I sold a lot of cotton in October for $32 and $32.75. I can't tell you what was and what was not in that shipment. I shipped most of his [appellee's] cotton down to Houston; his cotton is most all in there [referring to the Houston account sales], but I can't tell his cotton from the rest. In that list of cotton where the figures are blotched is where I think most of his cotton is. There are no numbers on that other [referring to a list of Houston cotton account sales]. That sale was made on the 10/14/1918."

In fact, the record discloses, from an inspection of the account sales, that there are no missing "Shipper's Marks and Nos." (gin numbers), except on lists of sales made on October 14, 1918. The "Shipper's Marks and Nos." (gin numbers) are all intact on the list for October 21, 1918, and March 4, 1919. Mrs. Rhoades testified that:

"The first five bales of the Pointer crop was sold to Mr. Rhoades, and he [appellee] got credit for that. The cotton of the Pointer crop that Mr. Rhoades didn't buy was shipped to Garrow, McLain & Garrow, of Houston; it was shipped along with other shipments of cotton. Statements were sent us of sales made by them. * * * After the first 5 bales it went to Houston. I know that all the cotton of the Pointer crop except the first 5 bales went to Houston."

But appellant insists that:

"The aggregate weight of the 18 bales was 8,568 pounds, and the aggregate of the first 5 bales was 2,474, making an aggregate weight of 5,094 for the remaining 13, one-half of which, or 2,547 pounds, belonged to the appellee.

"It is undisputed that the net returns of the first 5 bales was $317.31, which, deducted from $1,223.90, the net amount that the jury found that all of appellee's one-half brought, leaves $906.59. But this $906.59 also included $33.75, what the remnant mentioned in the issue brought, which deducted from the $906.59, left $872.44, that the jury found the said 2,547 pounds, the appellee's assumed one-half of the 13 bales, brought net, or better than 34 cents per pound net; that is, assuming the jury only charged appellee with the amount that the 5 bales were actually sold for."

We cannot agree with appellant's contention. It is admitted that the aggregate weight of the 18 bales was 8,568 pounds. It is also admitted that the aggregate of the first 5 bales was 2,474 pounds. Taking the difference would leave 6,094 pounds, the weight of the last 13 bales, instead of 5,094, as stated by appellant. It is agreed that appellee received $317.31 as a credit on appellant's books for appellee's one-half of the first 5 bales. The jury said that appellee was entitled to $1,223.90 for the entire one-half of the proceeds of 18 bales. From the $1,223.90 take the $317.31, and we have $906.59, but this includes $33.75 as appellee's half of a remnant of seed cotton, which being deducted, leaves $872.84 as appellee's net half of the net proceeds of the 13 bales. The expenses of ginning and yardage were shown by the gin and yard statements introduced in evidence, and the expense of shipment, sales, commission, etc., were shown by the

account sales in evidence, which together show an expense, approximately, of $11 per bale, or a total expense of $143 for the 13 bales. Then take one-half of the net proceeds, $872.84, and add thereto one-half of the expense, $71.50, makes $944.34. Divide this by the one-half of the weight of the 13 bales, 3,047, and we have 31 cents per pound, the price for which the cotton was sold, and that averages somewhat more than 100 points less than the Houston market on October 14, 1918. Appellant, as above shown, makes a mistake of 1,000 pounds in the weight of the 13 bales, he asserting same was 5,094 pounds, when it should be 6,094 pounds, and that accounts mainly for the error in price, as calculated by him.

[9] Appellant's final complaint is that:

"The court erred in admitting, over appellant's objection, the account sales rendered by a cotton factor selling cotton for appellant, and tending to show what such cotton sold for at times and places different from the times and places of conversion, because such testimony is not competent to prove the measure of damages."

This proposition is based upon appellant's eighth assignment of error, which is:

"The court erred in submitting the deposition of the witness W. C. Selsby, together with the account sales thereto attached, showing weights, grades, and price of the bales of cotton shipped by defendant to Garrow, McLain & Garrow, of Houston, Tex., and sold by them, for the reason that such testimony was incompetent to prove plaintiff's damage, and was calculated to confuse the jury, and all as is shown by defendant's bill of exception No. 3."

So much of said bill of exception as raises the proposition is as follows:

"Plaintiff offered in evidence the depositions of the witness W. C. Selsby, together with the answers thereto, and particularly interrogatories Nos. 6 and 11, together with the exhibits attached to said answer, and to which evidence the defendant then and there objected, for the reason that the same was immaterial and irrelevant and incompetent to prove the measure of plaintiff's damages, and because the same were calculated to confuse and mislead the jury as to the value of the cotton in controversy, and because the same was prejudicial to the defendant, and which objection the court did then and there overrule and admitted said testimony, and permitted said interrogatories and answers thereto and exhibits attached to said answers to be read in evidence, and which

said depositions and exhibits fully appear in the statement of facts on pages 60, 61, 61a, and 61b, et seq., to which said pages of the statement of facts reference is hereby had, and the same is hereby referred to and made a part of this bill of exception, and to the action of the court in overruling defendant's said objection defendant excepted." etc.

We think appellant's objection to the testimony is too general. It goes to the depositions, answers thereto, the exhibits attached to same, and especially to interrogatories Nos. 6 and 11, together with exhibits attached to said answers. It will be observed that the objection did not go specifically to the introduction of the account sales contained in the exhibits, but to the whole depositions, answers, and exhibits. We think there can be no question as to the competency and materiality of the evidence. It was material, relevant, and competent, and we do not think it was calculated to confuse or mislead the jury. Appellant did not object to the account sales on the ground that they were hearsay, or not proven to be true, or that they were copies and the originals not properly accounted for. The said testimony was not objectionable on any of the grounds urged by appellant, and, if objectionable on any of the other grounds, said grounds should have been urged.

"It is the well-established rule of this court that, upon a bill of exception as to evidence admitted, this court will consider only such objections as were presented in the trial court and as are stated in the bill of exception." Wheeler v. Railway, 91 Tex. 359, 43 S. W. 876; Waller v. Leonard, 89 Tex. 510, 35 S. W. 1045; Lodge v. Leverton, 42 Tex. 18; 9 Ency. of Ev. p. 100.

Furthermore, plaintiff introduced and read in evidence the ex parte depositions of appellant, A. J. Rhoades, with the exhibits thereto attached, which said exhibits were copies of the same identical account sales attached to the depositions of the witness W. C. Selsby, and which said exhibits—account sales—attached to the deposition of A. J. Rhoades were not objected to. Railway Co. v. Hughes (Tex. Civ. App.) 73 S. W. 976; Railway Co. v. Porterfield, 92 Tex. 442, 49 S. W. 361.

There are other propositions urged by appellant, but, as they pertain to matters hereinbefore discussed and do not present any error, they are all overruled.

No reversible error having been shown, the judgment is affirmed.